JULIA R. DUANE, Respondent, v. CLINTON F. PAIGE and Others,
Respondents ; MARTHA J. CLARK and Others, as Executors, etc.,
of CHARLES SEYMOUR, Deceased, and Another, Appellants. .

*Purchase of real estate by an executor upon the foreclosure of a mortgage belonging to
his testator's estate — witness incompetent under Code of Civil Procedure, § 829 —
release to the executor — parol proof to vary it, incompetent — when an executor
is a necessary party under section 452 of the Code of Civil Procedure.*

Upon the trial of an action brought for the purpose of having determined the
rights of various persons in certain real estate, one of the defendants, who was
interested in the event of the action, was called by the plaintiff as a witness, and
testified that he was present at a mortgage foreclosure sale of the property
described in the complaint, and that one Lewis, since dead (who was at that time
one of the executors of the estate which owned the mortgage thus foreclosed),
bid the property in at such sale. The question was then asked, "Did Mr. Lewis
pay the $2,400 to the plaintiff's attorney in the action ?" The question was
objected to on the ground that under section 829 of the Code of Civil Procedure
the witness was not competent to testify as to the transaction, in that he was
personally interested in the case, and was testifying in his own interest as to a
personal transaction with a deceased person against that person's representatives
in interest. The objection was overruled and an exception was taken, and the
witness answered, "He did not."

*Held,* that such ruling was erroneous;

That, although the witness was called by the plaintiff, if he was, in effect, exam-
ined as a witness in his own behalf or interest, and his evidence would neces-
sarily operate to his own benefit, his testimony would not, by reason of his
being called by the plaintiff, escape the prohibition contained in section 829 of
the Code of Civil Procedure;

That, as the witness was present at the foreclosure sale as one of the parties to
that action, he was, in reality, if the money was paid in his presence, a party to
the transaction;

That the fact that the answer of the witness was in the negative, did not affect
the inadmissibility of the testimony under section 829 of the Code of Civil
Procedure.

Where the executor of an estate buys real estate at a sale, under the foreclosure
of a mortgage owned by the estate of which he is the executor, and does not
pay any consideration therefor, the legal title to the land is in the executor, but
as between him and the legatees, next of kin and creditors of his testator, it is
personal estate, and he holds it as the representative of the deceased. It is
immaterial whether the deed to the property is taken in the name of the execu-
tor as such, or in his individual name, and the heirs or devisees of the testator
cannot question the title of a purchaser from the executor under such
circumstances.

A release was given by the persons interested in the estate of a decedent to the executor thereof, who had in his own name purchased real property upon the foreclosure of a mortgage owned by the estate without paying any consideration therefor, and who took the deed thereof in his own name, which release was in the following terms :

" Stipulated that Frederick Lewis be and hereby is fully discharged from all liability for all money, property and choses in action and property rights which came to his hands as the property of the estate of Hazard Lewis, and a decree of Surrogate's Court of Broome county fully discharging him may be entered at any time without further notice; and his acts as executor of the will of Hazard Lewis, deceased, are closed and settled, and he is fully discharged as such executor from all further liability.

" And a decree to this effect, making it a final decree so far as the liability of said Frederick Lewis is concerned, may be entered at any time. Sept. 7th, 1887."

*Held*, that the expression " all money, property and choses in action and property rights which came to his hands as the property of the estate of Hazard Lewis," was broad enough to include the property purchased by such executor on the foreclosure sale, which was to be deemed personal property.

Where a release is general in its terms, and there is no limitation by way of recital or otherwise, the releasor may not prove an exception by parol; the instrument itself is the only competent evidence of the agreement of the parties unless avoided for fraud, mistake or duress, or some like cause; and if the words of the release fairly import a general discharge, their effect may not be limited so as to exclude a demand simply upon proof that at the time of its execution the releasor had no knowledge of the existence of the demand.

Although when a writing does not contain the whole agreement, the balance of the agreement may be shown by parol, the parol agreement must not be inconsistent with or vary the terms of the written part.

Where the plaintiff in an action seeks to reach assets, which, if they exist at all, primarily belong to the personal representative of a decedent, and are to be by him administered upon, such representative is a necessary party to the complete determination of the controversy, and, under section 452 of the Code of Civil Procedure, he should be brought in as a party thereto, although the objection of a want of proper parties to the action is not taken.

APPEAL by the defendants, Martha J. Clark and others, as executors, etc., of Charles Seymour, deceased, and another, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Broome on the 14th day of June, 1893, upon the report of a referee.

By the judgment appealed from a sale was directed of certain real estate in the town of Fenton in the county of Broome, and the proceeds, after paying therefrom certain costs, were directed to be paid, one-half thereof to the plaintiff, one-fourth thereof to the plaintiff

as the administratrix of Patrick H. Drake, deceased, and one-fourth thereof to the defendants Clinton F. Paige and Jane L. Ross, as administrators of Caroline L. Paige, deceased.

*Edward K. Clark,* for the appellants.

*Millard & Stewart,* for the respondent.

Merwin, J.:

On the 3d day of July, 1863, Hazard Lewis, a resident of Binghamton, N. Y., died leaving a will which was duly proved in Broome county on the 15th of July, 1863, and letters testamentary issued to Frederick Lewis, Clinton F. Paige and Horace S. Griswold, the executors therein named. The decedent left him surviving his widow, Maria Lewis, and three children, Frederick Lewis, Jane E. Drake, wife of Patrick H. Drake, and Caroline L. Paige, wife of Clinton F. Paige. By the will, after certain general bequests and devises were made, all the residue, after the payment of debts and expenses, was devised and bequeathed to the wife and the three children equally, one-fourth part thereof to each.

The testator at the time of his death owned a bond and mortgage given by Freeman Randall to secure the payment of $3,500, and the principal and some interest thereon was then unpaid. The mortgage covered about 201 acres of land in the town of Fenton. The bond and mortgage passed into the hands of the executors, and were included in the inventory made and filed by them. On the 17th of July, 1867, there then being due on the bond and mortgage about the sum of $4,194, an action was commenced in the Supreme Court in the names of the executors as such as plaintiffs for the foreclosure of the mortgage, and such proceedings were had that, on the 10th of August, 1867, a judgment of foreclosure and sale in the usual form was entered. In pursuance of the judgment the premises were sold by the sheriff on the 26th of November, 1867, and were bid in by Frederick Lewis for the sum of $2,400, and at the same date the sheriff executed and delivered to him a deed, it being recited therein that the bid had been paid by the party of the second part, and the receipt thereof was acknowledged. The deed did not run to Lewis as executor. It is alleged in the complaint that Lewis paid no part of the consideration or bid, but in taking the deed to himself made

himself the trustee of the owners of the residuary estate. Mr. Griswold, one of the executors, was the plaintiff's attorney on the foreclosure, and he drew the deed to Lewis, and it was duly recorded on November 27, 1867. On the 6th of January, 1868, the three executors, as such, united in a deed to one Wilcox of 64 acres, part of the 201 acres conveyed to Lewis by the sheriff. The consideration of this deed as stated therein is $1,700, and it was recorded January 6, 1868. On the 31st of June, 1873, Frederick Lewis and Maria A., his wife, executed to Patrick H. Drake a mortgage upon an undivided one-fourth of the balance of said premises, being about 137 acres. This mortgage covered a large amount of other real estate, and was given to secure the payment of $60,000. It was afterwards foreclosed by Drake and the premises bid in by him, the affidavits of sale being recorded February 11, 1876. The plaintiff as the representative of Drake, who died in 1882, claims by virtue of this foreclosure to be the owner of an undivided fourth in the said premises.

In August, 1870, Griswold, one of the executors, died. On the 25th of August, 1873, Frederick Lewis resigned as executor, under what authority does not appear. He died on the 4th of March, 1890, after the commencement of this suit. After the resignation of Frederick, Patrick H. Drake seems to have acted as executor under an order of the Supreme Court. He died in November, 1882. On the 28th of May, 1885, Frederick Lewis and Maria A., his wife, duly executed and delivered to Charles Seymour a mortgage on the premises in question, for the sum of $600, being money loaned by Seymour to the mortgagors at the time of the execution of the same. This mortgage was recorded. The papers do not disclose the date of the record, though it may, perhaps, be inferred that it was recorded at or about the time of its execution. Previous to this, and on the 3d of June, 1884, Frederick Lewis conveyed the premises to one Van Name, and he on June 6, 1884, conveyed the same to Maria A. Lewis, the wife of Frederick. The purpose of these deeds was to pass the title to the premises or whatever interest Frederick might have therein to his wife, and the consideration was a precedent debt. The deed to Van Name was recorded November 22, 1887, and the deed to Mrs. Lewis on December 18, 1888.

Jane E. Drake, one of the residuary legatees, died in May, 1883, leaving a will, by which all of her property was given to her two chil-

dren, the plaintiff and Virginia M. Drake. The latter died in 1884, leaving a will giving her property to her sister, the plaintiff. The plaintiff, as the owner of the residuary interest of Jane E. Drake, claims an undivided fourth interest in the premises in question or their proceeds.

Maria Lewis, the widow of Hazard Lewis, was adjudicated a bankrupt on October 31, 1873, and on May 24, 1877, her assignee in bankruptcy executed and delivered to Jane E. Drake a deed purporting to convey among other pieces of property an undivided one-quarter of the premises in question. Under this the plaintiff, as the successor in interest of her mother and sister, claims an undivided one-fourth interest in the premises or their proceeds.

Caroline L. Paige, the other of the residuary legatees, died in June, 1878, intestate, leaving her surviving her husband, Clinton F. Paige, and three children. Clinton F. Paige and Jane L. Paige, now Ross, were afterwards duly appointed administrators. Prior to the commencement of this action all the debts of Hazard Lewis and funeral and testamentary expenses were paid.

This action was commenced March 25, 1889, for the purpose of having determined the rights of the respective parties in the premises, the plaintiff claiming to be owner of a three-fourths interest therein. The plaintiff, as administrator of Patrick H. Drake, deceased, is not a party, nor is Clinton F. Paige, as surviving executor of Hazard Lewis, deceased, a party, nor are Clinton F. Paige and Jane L. Ross, as administrators of Caroline L. Paige, deceased, parties. No objection is raised by the answers of the defendants that there is any defect of parties.

It is found by the referee that Frederick Lewis, in the foreclosure sale, purchased the premises for the benefit of the estate, and paid no part of the purchase price ; that after he ceased to be executor in 1873, he could not convey the premises or any interest therein, and that the deed to Maria A. Lewis through Van Name, as well as the mortgage to Seymour, was inoperative ; that the plaintiff, individually, and as administrator of Patrick H. Drake, was the owner of a three-fourths interest in the property, and that the administrators of Caroline F. Paige owned the other one-fourth.

The referee also found, at the request of the appellants, that the premises in question have not been in the actual possession of any

person within the past twenty years; that no action appears to have been taken by any persons interested in the estate of Hazard Lewis to set aside the deed from the sheriff to Frederick Lewis until the beginning of the present action in March, 1889; that the premises in question were to be treated as personal assets in the hands of Frederick Lewis so far as the heirs and legatees of Hazard Lewis are concerned.

It also appears that prior to May, 1887, there was a proceeding in the Surrogate's Court of Broome county entitled, "In the matter of the intermediate accounting and judicial settlement of the accounts of Frederick Lewis, Clinton F. Paige and Patrick H. Drake, as executors of the will of Hazard Lewis, deceased;" and on the sixteenth of May a decree was made whereby it was adjudged, among other things, that Clinton F. Paige pay Maria Lewis the sum of $1,691.03; that Clinton F. Paige and Frederick Lewis, jointly, as such executors, pay to Maria Lewis the sum of $11.128.39, and that the executor Frederick Lewis pay to her the sum of $1,288.29, amounting in the aggregate to the sum of $14,107.71. By the same decree it was adjudged that Clinton F. Paige, either alone, or jointly with Frederick Lewis, pay to Julia R. Duane, the plaintiff herein, either as administrator of Jane E. Drake or of Patrick H. Drake, sums in the aggregate amounting to $9,688.69.

On the 7th of September, 1887, after divers negotiations, the parties interested in the estate executed and delivered an instrument of which the following is a copy:

"STATE OF NEW YORK — SURROGATE'S COURT, BROOME COUNTY.

---

"In the matter of the accounting and judicial settlement of the accounts of Frederick Lewis, Clinton F. Paige and Patrick H. Drake, as executors of the will of Hazard Lewis, deceased.

---

"Stipulated that Frederick Lewis be and hereby is fully discharged from all liability for all money, property and choses in action, and property rights which came to his hands as the property of the estate of Hazard Lewis, and a decree of Surrogate's Court of Broome county fully discharging him may be entered at any

time without further notice, and his acts as executor of the will of Hazard Lewis, deceased, are closed and settled, and he is fully discharged as such executor from all further liability.

" And a decree to this effect, making it a final decree so far as the liability of said Frederick Lewis is concerned, may be entered at any time.    Sept. 7th, 1887."

This was signed by the attorneys for Clinton F. Paige, by Clinton F. Paige and Jane L. Paige, as administrators of Caroline L. Paige, by the plaintiff herein, Julia R. Duane, and her attorney, and by Maria Lewis.    At the same date, and as a part of the same transaction, Maria Lewis and Maria A. Lewis, who claimed as assignee of Maria Lewis to own the interest of Maria Lewis in the estate and in the amounts awarded to her in the decree, executed and delivered a satisfaction of the decree.    No money was paid them, except the sum of $1,950 furnished by Frederick Lewis by means of an insurance policy.    The delivery of this satisfaction was the consideration of the release.    It is found by the referee that the parties executing the release did not intend to include therein the premises in question, or the avails thereof, and that there was no agreement or understanding that the title of Frederick Lewis and Maria A. Lewis to the premises in question should not be questioned, and he held that neither Maria A. Lewis nor the holder of the Seymour mortgage could derive any benefit in this action from the release.

1. Upon the trial the plaintiff called as a witness the defendant Clinton F. Paige.    Among other things, he testified that he was present at the foreclosure sale in 1867; that the other executors, Griswold and Lewis, were there, and that Lewis bid off the property and that Griswold was the attorney who brought the suit.    The question was then asked him : " Did Mr. Lewis pay the $2,400 to the plaintiff's attorney in the action ? "    This had reference to the bid for the 201 acres.    The objection was made by the appellants that, under section 829 of the Code, the witness was not competent to testify as to the transaction, in that he was personally interested in the case, and was testifying in his own interest to a personal transaction with a deceased person against that person's representatives in interest.    The objection was overruled and exception taken, and the witness answered " he did not."    Mr. Paige was a party

and interested in the event of the action. If the subject of the action was to be deemed real estate, he was tenant by the curtesy of the share of his deceased wife, and if personal property, then he was interested, as his wife died intestate, and he would be entitled to a distributive share of her personal estate. Although called by the plaintiff, he was in effect examined as a witness in his own behalf or interest, as the position of the plaintiff and of the witness as to the character or effect of the foreclosure was the same, and his evidence would necessarily operate to his own benefit. Mr. Lewis was then dead. But it is suggested that the question did not call for a communication or transaction between witness and the deceased, and that to be objectionable it must appear that the witness participated in the conversation or transaction. The witness was at the foreclosure sale as one of the parties to the action, and if the money was paid in his presence he was in reality a party to the transaction. The fact that the answer was negative does not affect the point. The latest expression of the Court of Appeals that we have noticed, upon the subject of the participation of the witness in the conversation or transaction, is found in *Matter of Bernsee* (141 N. Y. 392), where it is said : " If active participation in the conversation was necessary to exclude an interested witness, and he should as an observer be permitted to testify to transactions in form between the deceased and third persons, although such transactions were in his interest, it would furnish an easy and convenient method in every case of evading the statute. The decisions have enforced the spirit of the statute by excluding such evidence, and have treated transactions between the deceased and third persons in the presence of interested parties as if the witness actually participated therein." The exception was, we think, well taken.

The referee also received in evidence, over the objection and exception of the appellants, statements made by Frederick Lewis in January, 1888. This was after the rights of Maria A. Lewis and of Mr. Seymour had accrued, and his declarations as against them were not competent. They related to what occurred at the foreclosure sale and the conduct of Lewis afterwards, and tended to support the plaintiff's theory on the subject. Statements of Lewis made after this suit was commenced, and shortly before his death, were also received in evidence over proper objection and exception. They

related to the extent of the interest he or those claiming from him had in the property. We do not see how these rulings can be sustained.

It is, however, claimed that the rulings referred to, if erroneous, were harmless, and did not affect the result. That is not entirely clear.

2. A more important question arises as to the effect to be given to the stipulation or release of September 7, 1887. And in consider-ing this question we may assume that Frederick Lewis did not by the transaction upon the foreclosure become individually the owner of the property, but that he held the title for the benefit of the estate. In such a case, as said in *Lockman* v. *Reilly* (95 N. Y. 64, 70) : "The legal title to the land is in the executor or administrator, but as between him and the legatees, next of kin and creditors of the deceased party it is personal estate, and he holds it as the legal representative of the deceased." On page 71 of the *Lockman* case it is said : "That land bought in by executors on a foreclosure of a mortgage belonging to the estate is to be treated as personal prop-erty, which the executors may sell, and for which they are account-able as such, has been frequently decided, and it is immaterial whether the deed is taken in the names of the executors as such, or in their individual names. (*Clark* v. *Clark*, 8 Paige, 152; *Schoonmaker* v. *Van Wyck*, 31 Barb. 457; *Valentine* v. *Belden*, 20 Hun, 537; *Cook* v. *Ryan*, 29 id. 249.) In all these cases land thus purchased by an executor or administrator is regarded as a substitute for the mortgage foreclosed, and takes its place for all purposes as between the executor or administrator and the parties interested in the estate. It is not to be treated as land belonging to the testator. His heirs or devisees take no direct interest in it, and cannot dispute the title of a purchaser from the executor, though no power of sale be con-tained in the will. The heirs of an intestate cannot question the title of a purchaser from his administrator who has purchased land under such circumstances. (*Long* v. *O'Fallon*, 19 How. [U. S.] 116 ; Williams on Executors, p. 650, note d.)" In *Clark* v. *Clark* (*supra*) it is said that if upon an accounting the land so bid in remains unsold, the surrogate may direct a sale thereof and a distribution of the proceeds as a part of the estate.

The expression in the release, "All money, property and choses in action, and property rights which came to his hands as the property

of the estate of Hazard Lewis," is broad enough to include the property in question. It came to his hands, for he took the title to himself individually, and he did not, when he resigned, transfer it to his co-executor. It remains still in his hands to be accounted for as personal assets. That being so, the release applies, unless for some good reason this property is to be excepted from its operation. In this line it is found that it was not the intention of the parties to include this in the release. If by this it is meant to be found that there was a mutual mistake in making the language so broad, then the evidence does not, I think, warrant that conclusion. The evidence does not show that Maria A. Lewis, or her assignor, Maria Lewis, who together furnished practically the consideration of the release, did not intend the release should include the property in question. On the contrary, there is evidence that Maria A. Lewis relied on the fact that this property would be released. Neither they nor Frederick Lewis agreed that it should not be. The attorneys for the plaintiff and for Mr. Paige testify that nothing was said in the negotiations about this property, and that they did not know that Frederick Lewis had the title in his own name. It, however, appears that Mr. Paige had known of it for several years, and the plaintiff had brought a suit of partition, including this property as a part of the real estate owned in common, so that she or her attorney must have known that the mortgage had been foreclosed and the title bid in by some one, and the record showed who took the title, and that a mortgage had been afterwards given thereon. It is not claimed that any of the parties when they signed the release did not fully know its contents. It is said, on the part of the plaintiff, that all that Frederick Lewis wanted was a discharge of the decree. Still, plainly, the release is more than that, and it is presumed that all parties knew it when they signed it. Nor does the evidence show that as between Maria Lewis, Maria A. Lewis and Frederick Lewis of the one side and the other parties who signed the release upon the other side, there was any agreement except such as is indicated by the papers themselves. There was, therefore, no mutual mistake, and it is not claimed there was any fraud.

"Where a release is general in its terms, and there is no limitation by way of recital or otherwise, the releasor may not prove an exception by parol ; the instrument itself is the only competent evidence

of the agreement of the parties, unless avoided for fraud, mistake, duress or some like cause. So, also, if the words of a release fairly import a general discharge, their effect may not be limited so as to exclude a demand simply upon proof that at the time of its execution the releasor had no knowledge of the existence of the demand." (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182.) The rule that when the writing does not contain the whole agreement the balance may be shown by parol does not help the plaintiff, for the parol agreement must not be inconsistent with or vary the terms of the written part. (*Chapin* v. *Dobson*, 78 N. Y. 80.)

There is no question about the consideration. (*Farmers' Bank* v. *Blair*, 44 Barb. 641; *Morehouse* v. *Second Nat. Bank*, 98 N. Y. 510.) It was a stipulation in the Surrogate's Court which was intended to furnish a basis for a final settlement and discharge of the executor, Frederick Lewis.

We are of the opinion that the release upon its face covered the claim in question, and that no sufficient ground or reason appears in the case to restrict its operation, and that, therefore, the referee erred in not giving it effect.

3. Clinton F. Paige is the surviving executor of the estate of Hazard Lewis. He is not a party to the action in his representative capacity, and is not as such bound by the result. (*Rathbone* v. *Hooney*, 58 N. Y. 467; *Landon* v. *Townshend*, 112 id. 93; *Hall* v. *Richardson*, 22 Hun, 444.) The plaintiff in this case seeks to reach assets which, if they exist at all, primarily belong to the personal representative and are to be by him administered upon. It would seem that the executor as such was a necessary party to a complete determination of the controversy, and that under section 452 of the Code of Civil Procedure he should be brought in, although the objection of want of proper parties is not taken. (*Osterhoudt* v. *Board, etc.*, 98 N. Y. 239; *Peyser* v. *Wendt*, 87 id. 322; *Bear* v. *Am. R. Tel. Co.*, 36 Hun, 403.) There has been no final settlement of the estate.

The judgment must be reversed and new trial ordered, costs to abide the event.

HARDIN, P. J., concurred; MARTIN, J., not sitting.

Judgment reversed and a new trial ordered, costs to abide the event.