# DECISIONS

### IN

# CASES NOT REPORTED IN FULL.

---

### FOURTH DEPARTMENT, JUNE TERM, 1896.

In the Matter of the Application of the City of Rochester to Acquire Land for Park Purposes. William H. Robinson. Appellant; Mary Martin, Respondent.— Order affirmed, with costs and disbursements, on the opinion of the referee. The following is the opinion of the referee :

P. M. FRENCH, Referee : In 1859 five persons, who were the heirs at law of Nathaniel Hall, owned the premises taken by the city for park purposes in this proceeding, including the premises in dispute as well as other adjoining land  The premises in dispute, the title to which is claimed by William H. Robinson and also by Mary Martin, are situate between the boulevard leading from Rochester to Charlotte and the top of the high bank on the west side of the Genesee river.  In 1864 the said heirs at law of Nathaniel Hall conveyed to Samuel Donnelly a portion of the land owned by them, by the following description :  " All that tract or parcel of land situate in the town of Greece, being in township number one ;  beginning at the northwest corner of lot No. 2, running thence east to the top of the bank of the Genesee river ;  thence southeasterly, along the top of the bank, to a point that a line parallel with the north line would contain ten acres ; thence westerly, along said line, to the river road, known as Lake avenue ;  thence northerly along the line of said highway to the place of beginning; containing ten acres and no more."  By mesne conveyances the claimant Mary Martin has succeeded to the title so conveyed to Donnelly.  The top of the high bank referred to in this description is irregular, and· the question to be decided here involves the location of the east line of the premises.  If that line follows the course of the top of the high bank of the river in all its irregularities, the disputed land was conveyed to Donnelly and the claim of Mary Martin is substantiated.  If, however, on the contrary, that line is a straight line, as is claimed by the claimant William H. Robinson, such eastern boundary would exclude a·nd cut off the disputed land, which contains about one acre. and projects easterly to follow the course of the river at that point, and to which the said William H. Robinson claims title through mesne conveyances from the said heirs of Nathaniel Hall, all executed and delivered after the deed to Donnelly.  The description in the deed to Donnelly, above quoted, is unambiguous, very plain and easily understood, and there would seem to be no room for conjecture as to the intent of the grantors, or for construction of the language used so far as the eastern boundary is concerned.

Applying the elementary principle, that distances, courses and quantities must yield to natural monuments and objects, the east line of the premises conveyed to Donnelly must be held to be the top of the high bank, following all its irregularities.  The course

" thence southeasterly " is described and accurately fixed by the words following:: " Along the top of the bank," which described a natural monument or course marked on the land itself.

The exception to this rule concerning natural monuments, referred to in *Higinbotham* v. *Stoddard* (72 N. Y. 99), and similar cases, has no application here, because, if for no other reason, the course of the eastern boundary in the Donnelly deed is not accurately given in the deed; it is simply " southeasterly," which might be any course between due south and due east, were it not for the following language in the same sentence defining and locating it as " along the top of the bank."  As I understood the argument of counsel for the claimant William H. Robinson, it is that the south line of the premises conveyed to Donnelly, was, at the time of the deed to him, practically located on the ground by actual survey and then agreed upon as it is now located, and that it is located too far south to include " ten acres and no more " within the boundary lines.  To sustain this argument two things are necessary: *First,* the west and north boundary lines must be taken to be the center of the adjacent highways and not their exterior lines ;  and, *second,* to show title to the disputed land in the claimant William H. Robinson, the boundary line to be changed must be the easterly and not the southerly line, that is, the easterly boundary line, instead of following the high bank, must be a straight line extending from the northern to the southern boundary and reaching its southern limit at a point distant about 100 feet westerly from the top of the high bank.  Various measurements have been made and maps prepared and given in evidence, showing that if that were done the included land would be ten acres.

Much evidence has been taken up in the attempt to locate the starting point in the Donnelly deed, which is the northwest corner of lot 2, in the center of Lake avenue and the Handford Landing road, or at the intersection of their exterior lines.  The question is not without its difficulties, but the controlling fact which has led me to believe that the northwest corner of lot 2 is not in the center of those highways is, that the parties to the Donnelly deed, after causing the ten acres to be surveyed at the time of the conveyance, located the south line of the premises so far south that it is necessary to exclude the highway in order to include no more than ten acres and at the same time have the east line follow the top of the high bank.  The description used  does not in terms include any portion of the highways unless the northwest corner of lot 2 is in the center of the highway.  Such language is used that, under the authorities, the presumption would be that the highways were

intended to be conveyed, but that presumption is rebutted in this case because it appears that by excluding the highways and following the top of the high bank for the eastern boundary and leaving the southern line as located, just ten acres are included. (*Mott v. Mott,* 68 N. Y. 253; *Hussner v. Brooklyn City R R. Co* , 96 id. 23.) And, *second,* if any line is to be changed it must be the southern line. That is the line which is to be so drawn as to include "ten acres and no more " In no event could the eastern line be diverted from the top of the high bank, because it is located there by the express terms of the deed. The intention of the heirs of Nathaniel Hall to so locate that line, and their belief that they had so done, and that the southeast corner of the land conveyed to Donnelly rested on the high bank, is shown beyond a doubt by the fact that in May, 1865, about five months after their deed to Donnelly, they conveyed to James H. Shanley lands adjoining these on the south, and described the easterly boundary of Shanley's land as extending "northerly, along the top of said (high) bank, to the southeast corner of lands sold by the parties of the first part to Samuel Donnelly ; thence west, along said Donnelly's south line, to the River Road known as Lake Avenue." If Donnelly's southeast corner were about 100 feet westerly from the high bank, of course the description in the Shanley deed would be erroneous. The fact that the top of the high bank of the river at these premises has been changed by means of quarrying carried on there, or for any other cause, can make no difference in the location of the land conveyed. Such fact simply renders proof of location more difficult now than it otherwise would have been. Donnelly and his grantees have always occupied to the high bank, and it must be held that Mary Martin owned the land in dispute and is entitled to the money representing it which has been deposited to await the result of this reference. Another fact which is perhaps not controlling, but is at the same time not without its significance is, that if counsel for the claimant William H. Robinson were right and the south line must be moved about forty feet northerly to include with the highways just ten acres, still the disputed land would not belong to Mr. Robinson because of the Shanley deed above referred to, which has for its northerly boundary the southerly boundary in the Donnelly deed ; and further, there is no other party to this proceeding claiming to own this land.

John H. Foley, Appellant and Respondent, v. Augusta Bernstein, Respondent and Appellant, Impleaded with Another.— Order affirmed, *without costs, to either party.*—

HARDIN, P. J.: This action was commenced in the Municipal Court of Rochester and was taken by an appeal to the County Court of Monroe County where a new trial was had which resulted in a verdict for the plaintiff of $455 24.* The defendant moved for a new trial on the minutes on the grounds : (1) That the verdict is contrary to the evidence and against the weight thereof; (2) that the verdict is contrary to law; (3) that the verdict is excessive; (4) upon exceptions taken at the trial. Apparently, upon the motion of the defendant and in obediance to the decision made by the County Court, an order was entered, containing the following language: "It is ordered, that the motion for a new trial be, and hereby is, denied, if the plaintiff shall, within ten days after the entry of this order, stipulate to reduce the ver-

dict from $455.25* to $37.39; and if the defendant Bernstein shall, within ten days after the entry of this order, pay to the plaintiff's attorney his costs of the trial to be taxed, and ten dollars costs of this action. It is further ordered, that if the plaintiff shall not so stipulate, the motion for a new trial be, and hereby is, granted, upon the ground that the verdict is excessive and against the weight of evidence, upon payment by the defendant Bernstein of the costs of the trial, and ten dollars costs of this motion. In all other respects said motion is denied."

Plaintiff appeals "from so much of said order entered as directs that the motion for a new trial made in said action be denied if the plaintiff shall, within ten days after the entry of said order, stipulate to reduce the verdict from four hundred and fifty-five dollars and twenty-five cents ($455.25*) to thirty-seven dollars and thirty-nine cents ($37.39)," and from all further portions of said order. His notice of appeal seems to have been given September 3, 1895.

The learned county judge has said in an opinion delivered by him" The verdict of the jury for the price of the lumber sold before June twenty-first, amounting to $384.70 and interest, is contrary to the evidence and cannot stand." A perusal of the evidence leaves the impression that the county judge is correct in his conclusion that the verdict is against the weight of evidence, and his views in respect to the case are quite fully supported by the authorities referred to in his opinion. In the particular referred to, we think the decision of the county judge should be sustained, and that he applied the proper rule as to costs, and the order awarding a new trial should remain in force. (2) Upon the 5th day of September, 1895, the defendant Bernstein appealed "from so much of the order of the County Court of Monroe county * * * as imposes as a condition of granting a new trial herein, or reducing the verdict of the jury, the payment by the defendant Bernstein of the costs of the trial and ten dollars costs of the motion, and also from so much of said order as denies the motion of the defendant Bernstein for a new trial unconditionally." The defendant contends that the court erred in refusing to nonsuit the plaintiff at the close of his case and in refusing to direct a verdict for the defendant at the close of all the evidence. In support of the latter motion the defendant contended that the evidence indicated that Nusbaum sustained to the defendant Bernstein the relation of an independent contractor, for whose acts and contracts the defendant had no responsibility. We think the exceptions taken to the denial of the motion for a nonsuit do not present error. A question of fact was presented as to the relation sustained by Nusbaum to the defendant proper, upon all the evidence, for the consideration of the jury. Several other questions are discussed by the learned counsel for the defendant, but as we have reached the conclusion that a new trial must be had, it is not necessary to examine and discuss them on this occasion. Similar questions may not arise on a second trial. As neither party is successful on the appeal, we think the order may properly be affirmed, without costs to either party. All concurred.

George Weldon and James Z. Weldon, Appellants, v. Fred J. De Lisle and David P. Morehouse, as Receiver, Respondents.— Motion denied —

PER CURIAM : This case was submitted on the 14th of March, 1896. Appellant now