(63 App. Div. 151.)

### LEARY v. CORVIN et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. EVIDENCE—COMMUNICATIONS WITH PERSONS SINCE DECEASED—CONVERSATIONS WITH THIRD PERSONS.

Under Code Civ. Proc. § 829, disqualifying a party from testifying as to communications with one since deceased, the party cannot testify that deceased, her mother, said to a third person, in presence of witness: "This [referring to witness] is my only child. This is the one I want the property held in trust for by the church."

2. SAME—DECLARATIONS OF GRANTOR—ADMISSIBILITY.

Declarations of a grantor, made after his grant, cannot be received in evidence to the prejudice of his grantee's rights, or persons claiming under them.

3. TRUSTS—EVIDENCE—DECLARATIONS AGAINST INTEREST—REVERSIBLE ERROR.

Evidence that a parent told witness, before he had conveyed the property in question, and while he was in possession, that his daughter had given him money to assist in purchasing a home, which money he spent for the property in question, and that at her parent's death she was to have the home, was admissible, as against the parent's interest, in a suit to establish a trust.

O'Brien, J., dissenting.

Appeal from special term, New York county.

Suit by Rose M. Leary against Lizzie J. Corvin and the Church of St. Mary to establish a trust. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

For former opinion, see 60 N. Y. Supp. 563.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

J. Aspinall Hodge, Jr., for appellant.
David McClure, for respondent Corvin.
Michael Scanlan, for respondent Church of St. Mary.

McLAUGHLIN, J. This action was brought to have a deed of certain real estate in the city of New York, executed by the father and mother of the plaintiff to the defendant the Church of St. Mary,

declared a deed of trust for the plaintiff, and to set aside a deed from the church to the defendant Corvin, and to compel her and the church to account for the proceeds of a certain mortgage; also for certain rents, issues, and profits. The defendants had a judgment dismissing the complaint, from which the plaintiff has appealed.

There is little dispute as to the facts. The judgment is attacked mainly upon the ground of errors alleged to have been committed by the trial court in excluding certain testimony. The conceded facts are fully set forth in the opinion delivered by the learned justice sitting at special term, from which and the evidence in the case it appears that in March, 1874, the plaintiff—an only child, and then over 23 years of age—deposited to her credit in two savings banks in the city of New York the sum of $1,385; that in 1875 she drew this money from the banks, and gave it to her father, Patrick J. Corvin, in pursuance of an understanding that he and her mother, Mary Corvin, would purchase a house for a home, where they would all live until the death of her parents, and at their death the plaintiff should have the house for her own. At that time it was contemplated that a house located on Broome street, in the city of New York, would be purchased, but, owing to some difficulty with reference to the title, the purchase was not made, and no place, in fact, was purchased until 1880, although between 1875 and that time the father was on the lookout for a suitable place. In 1880 the father purchased the premises described in the complaint, paying therefor $6,500, subject to two mortgages,—one for $1,500, and one for $1,000,—and in making the purchase he used the money previously given to him by his daughter (he having continued to hold it in the meantime) and other money given to him by his wife. Immediately following the purchase, the father and mother went into and continued in possession until their deaths; the latter dying in 1892, and the former in 1898. It also appeared that the plaintiff was married to Martin J. Leary in 1874, and soon after the purchase of the premises they commenced to, and at different intervals between that time and 1890 did, occupy a portion of the house, for which rent was paid; that there were misunderstandings between the plaintiff's husband and her mother; that during this time the plaintiff used intoxicating liquors to such an extent that she spent much time in a sanitarium for the purpose of having such habit cured or corrected. In 1890 the father and mother of the plaintiff conveyed the premises to the defendant the Church of St. Mary for a nominal consideration; the church, for a like consideration, reconveying to them, and each of them, an estate for life. On the 20th of December, 1892, the church, pursuant to a resolution of its board of trustees, applied to the supreme court for leave to sell the premises to the defendant Lizzie J. Corvin, then Lizzie J. Hurley, for the expressed consideration of $14,500. The application was granted, and an order made permitting the sale to be made, and the church, on the 22d of December, executed a deed of conveyance to her of the premises in question. On the same day that this deed was executed Patrick J. Corvin released, for a nominal consideration, to

Lizzie J. Hurley, his interest in the premises, and she thereupon mortgaged the same to certain parties for the sum of $6,000, $1,000 of which she retained, and the other $5,000 she gave to the church, which was all the church received for the transfer. Immediately following the giving of the mortgage, she reconveyed to Patrick J. Corvin, subject to the mortgage, a life estate in the premises. On the 9th of February, 1893, Patrick J. Corvin married the defendant Lizzie J. Corvin, and from that time they occupied the premises until the death of Patrick, since which time she has continued in such occupancy. Shortly after the death of the father, the plaintiff brought this action for the relief before stated.

Upon the trial the plaintiff testified that just before the deed was given to the church she was called into a room in which were her mother and Father Hughes, who was the pastor, and also the treasurer and one of the trustees, of the defendant church, and that her mother then said to Father Hughes: "This is my only child. This is the one I want the property held in trust for by the church." This testimony was subsequently stricken out by the court, to which the plaintiff took an exception; and this is the first error alleged on the part of the appellant as calling for a reversal of the judgment. We are of the opinion that this testimony was properly stricken out. It was not admissible under section 829 of the Code of Civil Procedure. It was, under the circumstances, the same as though the plaintiff had participated in the conversation. In re Bernsee's Will, 141 N. Y. 389, 36 N. E. 314; In re Dunham, 121 N. Y. 575, 24 N. E. 932; In re Eysaman's Will, 113 N. Y. 62, 20 N. E. 613, 3 L. R. A. 599; Holcomb v. Holcomb, 95 N. Y. 316; Burnham v. Burnham, 46 App. Div. 513, 62 N. Y. Supp. 120. Nor did the court err in excluding testimony as to declarations made by Patrick J. Corvin after he had conveyed the premises to the church. Declarations or acts of a grantor, made subsequently to his grant, cannot be received to the prejudice of his grantee's rights, or persons claiming under them. Williams v. Williams, 142 N. Y. 156, 36 N. E. 1053; Sanford v. Ellithorp, 95 N. Y. 48; Vrooman v. King, 36 N. Y. 477; Jackson v. Aldrich, 13 Johns. 106; Padgett v. Lawrence, 10 Paige, 180, 40 Am. Dec. 232. We are, however, of the opinion that the court erred in striking out the testimony as to declarations made by Patrick J. Corvin prior to the conveyance to the church. The witness Galvin testified that she had a conversation with the father and mother of the plaintiff in January, 1886. She was then asked the following question:

"Q. Will you tell us what the conversation was then with Mr. and Mrs. Corvin, in your presence, respecting the purchase which had been made of this house, and what it was purchased for, and so on? A. I had been over to Brooklyn, to call upon Mrs. Leary. She had a child that was very sick, and I took the child home to her grandmother. When I came home, I told Mr. and Mrs. Corvin that they should have Rose moved back there, and Mr. Corvin would not approve of it. He said she left of her own accord, and she could not come back there; and Mrs. Corvin said, 'Yes, dad, she will come back,' and he said, 'No, she won't.' 'Well,' she says, 'Yes, she will come back. She has as much right to this house as you have. There is $1,300 of her earned money in this house, and the house is hers after we leave it. This home is hers after we leave it, and while she lives.' Mr. Corvin says, 'You gave Rose the money.' She says, 'Yes, I gave her the money, I admit;

71 N.Y.S.—22

but she helped me to earn it, and when she gave it to you she was married, and it was as much her husband's as we lived, and which should be hers.' And then Mr. Corvin left the house, and went over to Brooklyn, and he brought his daughter back, and moved her right back to the house. Mrs. Corvin said in this conversation last mentioned, 'You took her money with the intention of buying a home that we should have as long as we lived, and which should be hers when we leave it.' I mean Rose's, their daughter. She was the only heir for it. Mr. Corvin says: 'Just as you say. That is right. I put the money there, and what you say is right.' He said he put Rose's money in the house with that intention. She said Rose had put $1,300 in the house, and he said 'Yes,' and what he said he meant to stay by. He also said that Mrs. Corvin had given him the bonds that she had. He said she had given him $4,500, which she had put in that house, and the money he got from Rose he had used as purchase money in that house. He did not mention about paying off the $2,500 mortgages. He said the house was bought absolutely clear, and they did not owe anything on it, and that it was their home, and at their death it would be their daughter's."

All of this answer was subsequently stricken out, and the plaintiff excepted. We think the ruling of the court was erroneous, and necessitates a reversal of the judgment. It was very material testimony, as bearing upon the plaintiff's claim, and, if believed by the trial court, tended in no slight degree to establish the allegations of her complaint. These declarations of the father were made when he was in possession, and before he had made the conveyance to the church. They were against his interest, and were, therefore, admissible as characterizing the extent of his possession. Chadwick v. Fonner, 69 N. Y. 404; Abeel v. Von Gelder, 36 N. Y. 513; Vrooman v. King, Id. 477; Loos v. Wilkinson, 110 N. Y. 211, 18 N. E. 99, 1 L. R. A. 250. And it appears from the opinion delivered by the learned justice at special term that this was the view entertained by him, because he says: "The declarations of Patrick J. Corvin which are alleged to have been against his interest, and which are said to have been made prior to his conveyance to the church, were clearly competent as against him, * * * and are, therefore, competent as against those deriving title through or from him;" and yet, notwithstanding this view, as appears from the record before us, all of the testimony relating to these declarations was stricken out, and an exception given to the plaintiff. If the father had been living, and a defendant in this action, no one would seriously contend but that the testimony would have been competent as against him; and, whenever the admissions of one having or claiming title to real estate would thus be competent against him, they are equally competent against all persons subsequently deriving title through or from him. Chadwick v. Fonner, supra; Jackson v. Bard, 4 Johns. 230, 4 Am. Dec. 267; Pitts v. Wilder, 1 N. Y. 525; 1 Greenl. Ev. pars. 109, 110. It was, therefore, competent to prove these declarations against the defendants. This testimony, as before indicated, was very material. It bore directly on the issue involved, and should have been considered by the trial court. If it be true that this plaintiff gave to her father money which was used by him in the purchase of the premises referred to in the complaint, under the agreement indicated in this testimony, then she has rights in that property as against all except bona fide purchasers for value, without notice, which a court of equity will recog-

nize and enforce; certainly to the extent of the money advanced, together with interest thereon.

We are of the opinion that, on account of the error thus committed, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and HATCH, J., concur. O'BRIEN, J., dissents.

INGRAHAM, J. I concur in the reversal of the judgment upon the ground stated by Mr. Justice McLAUGHLIN. The evidence of the declarations of Patrick J. Corvin, made while he was the owner of and in possession of the property, strongly corroborated the testimony of the plaintiff's husband; and I think the arrangement under which the plaintiff advanced her money towards the purchase of the property was clearly established. This money furnished by the plaintiff was her money, drawn from her accounts in savings banks, and delivered to Patrick J. Corvin upon the express agreement that the property, after the death of Corvin and his wife, should belong to the plaintiff. Corvin, thus being intrusted with the plaintiff's money to be applied to the purchase of the house upon these conditions, took a deed in his own name, without the knowledge of the plaintiff, and without providing therein for the remainder to which, by the agreement under which she advanced the money, she was entitled. Under such circumstances it seems to me that a trust resulted in favor of the plaintiff as to such remainder. There is no evidence but that the money contributed by the plaintiff was the fair value of such a remainder, subject to the two life estates. In the case of Schierloh v. Schierloh, 148 N. Y. 103, 42 N. E. 409, the provisions of 4 Rev. St. (8th Ed.) p. 2437, §§ 51, 53, in relation to resulting trusts, were discussed, and it was said:

"It may be that in cases where an aliquot or some other definite part of the consideration has been advanced, the parties intending that some specific interest shall vest in the person paying it, or in proportion to the sum paid, there might be a resulting trust to that extent."

In this case the condition there considered exists. Under the agreement the plaintiff was to have the remainder after the death of her parents. Upon that understanding she contributed her money towards the purchase of the house. It was the duty of the defendant, who was intrusted with carrying this agreement into effect, that the deed taken by him should express the agreement. This he did not do, and I think it clear that a trust resulted in consequence of a failure of the defendant to carry out the agreement under which the plaintiff contributed her money. The plaintiff's father had been for many years a policeman, and neither he nor the plaintiff was conversant with legal rules applicable to a case of this kind. There is no doubt that the father acted in entire good faith, and, as the plaintiff was his only child, it was natural that she should inherit the property upon the death of himself and wife. Just what induced the plaintiff's parents to violate their agreement with her, and make the conveyance specified in this case,

is not apparent.    The fact that their only daughter had become addicted to the use of intoxicants so as to be unable to take care of herself would rather seem to be a reason for making some provision for her.    But, however that may be, she had the legal right to have the agreement under which she advanced her money to be applied to the purchase of this property enforced, and I think, upon the undisputed evidence, she was entitled to a judgment to that effect.