LEE W. BEATTIE and Another, Appellants, *v.* ISAAC F. GARRISON and Another, Respondents.

Second Department, February 2, 1923.

Mortgages — action for trespass — boundaries control where there is disagreement between boundary and quantity — mortgages under which plaintiffs' claim included land in question — witnesses — defendant and one through whom defendants claim title incompetent under Civil Practice Act, § 347, to testify to declarations made by prior owner and mortgagor since deceased — declarations were hearsay and incompetent.

Where the quantity of land mentioned in a mortgage does not agree with the quantity in the premises described therein by metes and bounds, the metes and bounds are controlling, and the quantity mentioned must yield thereto.

The plaintiffs had title to the land in question in an action for trespass, which title was acquired through sales in the foreclosure of two mortgages, where it appears that the mortgages covered the land in question though there was a discrepancy between the quantity of land specified in the mortgages and the metes and bounds of the description in the mortgages, and though it appears that a prior mortgage on one of the two parcels constituting the land had been paid off and that the description in the mortgages in question was the same as that in the prior mortgage of the smaller parcel, where it further appears that while the description used in the subsequent mortgages was apt for the premises when only the first parcel was involved, still it was equally apt when more land had been added by the purchase of another parcel.

One of the defendants and a witness through whom the defendants obtained their title were incompetent, under section 347 of the Civil Practice Act, to testify to declarations of a prior owner, a mortgagor, who had died before the trial, made many years after he had executed the mortgage under which the plaintiffs claim title, which declarations related to the boundary of the land in question.

Furthermore, the declarations were hearsay and incompetent, for at the time of the declarations testified to, the declarant had ceased to be the owner of the premises in so far as this mortgagee and those claiming under him were concerned, and in making those declarations he was not pointing out his boundaries, but as owner of a larger piece of land he was pointing out the portion thereof which he claimed was subject to the mortgage.

Furthermore, as to the mortgagee, the mortgagor had conveyed this land to him as security and he could not by any declarations thereafter made affect the title thus granted.

YOUNG and KELBY, JJ., dissent, with opinion.

APPEAL by the plaintiffs, Lee W. Beattie and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Orange on the 16th day of May, 1922, upon the decision of the court, rendered after a trial at the Orange Special Term, dismissing the complaint upon the merits and perpetually enjoining the plaintiffs from trespassing upon certain real property of the defendants.

*Percy V. D. Gott,* for the appellants.

*T. V. W. Anthony,* for the respondents.

JAYCOX, J.:

The Special Term has decided that the plaintiffs are the owners of the westerly part and the defendants the owners of the easterly part of the premises which are the subject of this litigation. The plaintiffs in their complaint alleged ownership of the whole tract except a small portion not necessary to be considered here, and sought to restrain the defendants from trespassing thereon. The defendants in their answer claimed ownership of all the premises described in the complaint except that portion thereof which has been awarded to plaintiffs by the decision herein. The plaintiffs' title is derived from two mortgages made by Sylvester Owens and subsequently foreclosed. The plaintiffs have acquired title to all of the land described in the complaint covered by said mortgages, and the title to all of said lands, if any, not covered by said mortgages is vested in the defendants. The determination, then, of what lands are embraced in the descriptions in said mortgages is decisive of the action. At the time of making the said mortgages the mortgagor owned the whole tract now in controversy. The first of these mortgages is dated October 15, 1856, and in it are described four parcels of land. The description which affects the premises involved here reads as follows: "Also all that certain lot, piece or parcel of land situate, lying and being in the said Town of Cornwall and bounded as follows to wit, on the north by lands of Campbell Faurot; on the east by lands of Owen Owens, on the south by lands of Thomas Potter and on the west by lands of Widow Flood, known as the Havens lot, containing as estimated about 8 or 10 acres of land and lies on the north side of the highway leading from Fort Montgomery Dock to the mountain."

The other mortgage was made four years later by the same party to the same party, and contains the same description. This description is entirely adequate to convey the whole parcel in dispute. None of the boundaries for that purpose are or can be criticised in any way, but one, and that one is the easterly boundary. At the time of this mortgage the land on the east was owned by

Thomas Owen and not by Owen Owens. The description, however, mentions no land on that side owned by the mortgagor, as would be the case if it was not intended to subject the whole parcel to the lien of the mortgage. I think it must be assumed that the mortgagor intended the tract conveyed to extend to the owner adjoining him on the east.

The quantity of land mentioned in the mortgage does not agree with the quantity in the premises described in the complaint. It is the general rule, however, that all lands embraced within the boundaries given in a conveyance pass by such conveyance, although the actual quantity is greatly in excess of that mentioned in the conveyance. The rule as stated in *Jackson* v. *Moore* (6 Cow. 706) is as follows: " When the quantity is mentioned, in addition to a description of the boundaries, or other certain designation of the land, without an express covenant that it contains that quantity, the whole is considered as mere description. The quantity being the least certain part of the description, must yield to the boundaries or number [of the lot], if they do not agree." (*People* v. *Law*, 34 Barb. 494; *Matter of City of Rochester*, 8 App. Div. 609; *Jackson* v. *McConnell*, 19 Wend. 175; *Jackson* v. *Barringer*, 15 Johns. 471; *Roat* v. *Puff*, 3 Barb. 353.)

The defendants claim it was not the intention of the parties to mortgage the whole premises. No mistake is claimed and the instrument was never reformed. The court has held with defendants and has held that the mortgages in question did not cover all of the land, apparently because of the discrepancy in the quantity of land mentioned and the quantity in the parcel in dispute, the history of the title and some declarations of the mortgagor made many years after the execution of the mortgage. As stated above, the quantity of land mentioned in a description, unless there is something to show an intention to convey a certain quantity of land, is the least significant feature of the description. That the quantity intended to be covered by this mortgage was indefinite and uncertain is clearly indicated by the fact that it is stated that the quantity as estimated is " about 8 or 10 acres." When there is doubt, the rule is that the description should be construed most favorably to the grantee. (*Van Winkle* v. *Van Winkle*, 184 N. Y. 193, 209; *Clark* v. *Durland*, 35 App. Div. 312, 318; *Hathaway* v. *Power*, 6 Hill, 453.) The history of the title that is relied on and which is at all significant is as follows: In 1820 Beverly Garrison, being then the owner of a large tract of land which included the premises, conveyed a parcel containing " about three and one-half acres, be the same more or less," to one Stephen Cronkhyte. This it is

conceded forms the westermost part of the premises. This deed was not recorded. The description in that deed is not used in any subsequent instrument, and the monuments therein mentioned are not again referred to. In 1848 Stephen " Kronkhyte " conveyed to Sylvester " Owen " a parcel of land by the same description contained in the subsequent mortgages made by Sylvester Owens under which the plaintiffs claim. There is no proof that Cronkhyte owned any land other than the three and one-half acre parcel above mentioned. Owens in 1851 made a mortgage to one David Fowler, covering the lands last above mentioned and other lands. In this mortgage, the parcel conveyed by Cronkhyte to Owens was described as in the deed from " Kronkhyte " to " Owen " above mentioned. After having made the above-mentioned deed to Cronkhyte, in 1826, Beverly Garrison conveyed the whole tract which he originally owned to John Owen. He made no exception of the parcel conveyed to Cronkhyte. John Owen died intestate and without heirs capable of inheriting, and the People of the State of New York by letters patent dated August 8, 1834, granted ninety-seven acres to Owen Owen, and on October 17, 1834, he conveyed said ninety-seven acres to his son, Thomas Owen. In none of these is there any reference to the parcel conveyed to Cronkhyte. On May 24, 1851, Thomas Owen conveyed to John W. Hall twenty-four and one-half acres by a description mentioning monuments and giving courses and distances. This description also gave the names of the adjoining owners upon three sides, Potter, Flood and Faurot. Upon the fourth side, where the land was actually bounded by other land of Thomas Owen, the line is described as running " thence along said Hall's line," but does not mention the adjoining owner. It is claimed that this is explained by the fact that Hall lived on the parcel then retained by Thomas Owen, but I do not see that that casts any light upon it. One year later, in 1852, Hall conveyed the last-mentioned parcel to Sylvester Owens by the same description as is contained in the deed to him. Both of these deeds contained this exception, " excepting and reserving from the same about three and a half acres of land now in the possession of Stephen Conkling," no doubt meaning Cronkhyte. Cronkhyte's deed was not recorded, and the fact that he had a deed apparently was not conceded. Some years later Sylvester Owens paid off the mortgage to Fowler, and about the same time made the first mortgage to Morrison under which the plaintiffs claim, containing the description above quoted. In 1860, as already mentioned, another mortgage was made to Morrison containing the same description. The defendants claim that in this history there are facts which indicated to the mortgagee that the mortgagor did not intend

to convey all the land embraced in the description. It certainly cannot be so held because the premises were acquired in two parcels, nor because, when the mortgagor owned one parcel, he mortgaged it by the description later used when he had added another parcel to it. The description was apt for the premises when only the first parcel was involved, and it was equally apt when more land had been added by the purchase of another parcel. I can see no requirement for a different description by reason of this history, nor anything requiring the mortgage to have anything added to a description which fairly embraced the premises.

The testimony upon which the defendants rely as indicating that all of the premises described in the complaint were not embraced in the mortgages under which the plaintiffs make title was given by one of the defendants and by a witness through whom the defendants obtained their title. This testimony was objected to as incompetent. The objection was overruled and an exception taken. The testimony related to declarations which the witnesses testify Sylvester Owens, now deceased, made many years after he had made the mortgage under which the plaintiffs claim. These witnesses were incompetent to testify under section 347 of the Civil Practice Act. (*Foote,* v. *Beecher,* 78 N. Y. 155.) The evidence was also incompetent as hearsay and was not competent within any of the authorities cited by the defendants. The rule depended upon by the defendants is as follows: " The declarations of deceased persons respecting boundaries are received as competent evidence, and are an exception to the rule which rejects hearsay testimony, but to bring the case within the rule of the exception, it must appear that such declarations were made by deceased persons while in possession of lands *owned* by them and in the act of pointing out their boundaries with respect to such boundaries, and when nothing appears to show an intent to deceive or misrepresent." (*Partridge* v. *Russell,* 18 N. Y. St. Repr. 685, 689.) The declarant, at the time of the declaration testified to, had ceased to be the owner of the premises in so far as this mortgagee and those claiming under him were concerned. Neither was he pointing out his boundaries. He was the owner of all the land and he was pointing out the portion thereof which he claimed was subject to Morrison's mortgage. As to the mortgagee, however, the mortgagor had conveyed this land to him as security and he could not, by any declaration thereafter made, affect the title thus granted. (*Vrooman* v. *King,* 36 N. Y. 477; *Williams* v. *Williams,* 142 id. 156; *Leary* v. *Corvin,* 63 App. Div. 151; *Ranken* v. *Donovan,* 46 id. 225, 229; *Duane* v. *Paige,* 82 Hun, 139; *Padgett* v. *Lawrence,* 10 Paige, 180. See, also, *Conkling* v. *Weatherwax,* 181 N. Y. 258, 262.) The oral evidence was, there-

fore, incompetent upon two grounds: It was given by persons incompetent to testify and in relation to declarations made after the execution of the mortgages under which the plaintiffs claim.

The judgment should be reversed upon the law and the facts, and judgment directed for the plaintiffs, with costs in this court and the trial court.

KELLY, P. J., and RICH, J., concur; YOUNG, J., reads for affirmance, with whom KELBY, J., concurs.

YOUNG, J. (dissenting):

The testimony as to the declarations made by Sylvester Owens was hearsay and incompetent. The witnesses giving this testimony were also incompetent to testify under section 347 of the Civil Practice Act. Nevertheless, in my opinion, the judgment is right and the remaining evidence in the case is sufficient to support it. I do not deem the errors mentioned so vital as to call for a reversal. It seems to me that the fact that Sylvester Owens in 1851 mortgaged certain property to David Fowler, estimated as eight or ten acres of land, and thereafter in 1856 made the first mortgage to Stephen D. Morrison, describing the property by exactly the same description contained in the Fowler mortgage, which had been paid off, is clear and convincing proof that Owens intended to mortgage to Morrison the same land he had previously mortgaged to Fowler, which could not possibly cover the property known as the Hall lot because, at the date of the Fowler mortgage, Owens did not own the Hall property. He did not receive the deed from Hall until about one year after he had made the mortgage to Fowler.

Even though the judgment may have awarded to plaintiffs a small portion of the Hall property, so called, which counsel suggests may have been wrongfully appropriated before the Hall deed was given, appellants are not harmed and the defendants have not appealed.

The judgment should be affirmed, with costs.

KELBY, J., concurs.

Judgment reversed, on the law and the facts, and judgment directed for the plaintiffs, with costs, in accordance with opinion by JAYCOX, J.