JOHN L. WELLINGTON, RESPONDENT, *v.* THE CONTI-
NENTAL CONSTRUCTION AND IMPROVEMENT
COMPANY, APPELLANT.

*Liability of a stockholder under section* 10 *of chapter* 140 *of* 1850 — *when it ceases* —
*form of remedy of a creditor of the corporation* — *case on appeal* — *when it does not*
*require a review of questions of fact.*

In an action, brought by a creditor of a corporation to enforce the liability created
by section 10 of chapter 140 of 1850, as amended by chapter 282 of 1854, against
a stockholder of a corporation who has not paid in full for the stock held by
him, the burden of showing that such stock has not been paid for in full rests
upon the plaintiff.

The liability imposed by the statute ceases when the whole amount of the subscrip-
tion for the capital stock held by a stockholder has been paid to the company;
and a claim, based upon such statutory liability, is extinguished by the subse-
quent payment to the corporation of the amount payable by the stockholder on
his stock.

The remedy of the creditor under such statute is not by a separate action against
one or more of the stockholders, but by a suit in equity against all stockholders
similarly situated.

If it does not appear, by the case on appeal, that all the evidence is returned, the
General Term is not required to review a question of fact where there is some
evidence to support it.

*Porter* v. *Smith* (107 N. Y., 531) followed.

APPEAL by the defendant from a judgment in favor of the plaintiff
for $8,931.63, entered, upon the report of a referee, in the office of
the clerk of Rensselaer county on July 21, 1888.

This action was brought to recover two separate demands. The
first and smaller one was for work, labor and services alleged to have
been done by plaintiff for defendant. The second and larger one was
for work, labor and services alleged to have been performed by
plaintiff for the Boston and Hoosac Tunnel and Western Railroad
Company, incorporated in New York February 16, 1877.

This corporation was consolidated in New York with a Vermont
corporation of the same name April 19, 1880, and the corporation
created by such consolidation was known as the first consolidated
company. Subsequently, by an agreement of March 1, 1881, this
last company, with others, formed, or attempted to form, a new con-
solidation under the same name. This last consolidation was after-
wards adjudged to be illegal.

The work for which the plaintiff claims, in his second cause of action, was found to have been performed between June 1, 1877, and May 1, 1879. The referee also found that Fred L. Ames and F. Gordon Dexter were stockholders in said Boston, Hoosac Tunnel and Western Railroad Company of New York; that they had never paid more than ten per cent of their subscriptions; that about February 9, 1881, they entered into a contract with William L. Burt and agreed to convey to him not less than two-thirds of the whole stock, and that Burt agreed to discharge all outstanding indebtedness of the company to all persons; that a subsequent agreement between the same parties, dated April 9, 1881, was made, not affecting the aforesaid agreement, materially, in reference to this action; that Ames and Dexter performed their part of said agreement; that on the 26th of May, 1881, Burt assigned to defendant all his right in said agreements and defendant agreed to pay all sums of money unpaid on said agreements. The referee, therefore, found, as matter of law, that Ames and Dexter were liable to plaintiff for the debt due him from the railroad company, and that defendant by the last agreement became liable to pay plaintiff said indebtedness.

From the judgment entered thereon the defendants appeal.

*A. H. Joline,* for the appellant.

*W. C. Tracey,* for the respondent.

LEARNED, P. J.:

In regard to the first cause of action the letter of defendant to Burt, dated August 11, 1881, is very full. It authorizes him to act for the company in completing existing contracts for the construction, in acquiring rights of way, in obtaining necessary engineering, authorizing him to draw for necessary disbursements. It appears, too, that a large amount of drafts drawn by Burt on the defendant for construction, were paid prior to February, 1882.

Now there is certainly some evidence given by the the plaintiff that he did work for defendant under Burt during the period embraced in the first alleged cause of action. He seems to have been also employed by a company other than defendant. But it is not impossible that he should have done work for both. It does

not appear by the case that all the evidence is returned. (*Porter v. Smith*, 107 N. Y., 531.) Indeed, we are not able to find that the case has ever been settled by the referee. (Code Civil Pro., § 997, Rule 35.) At any rate, under that decision, we are not required to review a mere question of fact where there is some evidence to support it. And whether the plaintiff did the work, labor and services in this first cause of action alleged, appears to be a mere question of fact supported by evidence. The power given by defendant to Burt was very broad. The resolution of the directors, passed November 30, 1881, does not seem to take away any authority except as to the mode of payment. We have looked so far at the evidence returned on this cause of action as to conclude that we are not required to reverse this finding of fact.

The second cause presents very different questions. The plaintiff's claim is based in the following grounds: 1st. That between June 1, 1877 and May 1, 1879, plaintiff did work for the Boston, Hoosac Tunnel and Western Railroad Company, for which they owed him. 2d. That Ames and Dexter were stockholders, and that, having paid only ten per cent of their subscriptions, they were liable to plaintiff for this indebtedness. 3d. That by the agreements between Ames and Dexter and Burt of February 9 and April 9, 1881, Burt became personally liable to plaintiff to pay him the indebtedness owing by the Boston, Hoosac Tunnel and Western Railroad. 4th. That by the agreement of May 26, 1881, between defendant and Burt, defendant became liable to plaintiff to pay him said indebtedness. 5th. That this liability exists notwithstanding the receipt and acquittance executed June 15, 1881, between Ames and Dexter and the defendant of all liabilities under the agreements of February 9 and April 9, 1881.

The liability of Ames and Dexter to plaintiff is claimed to arise on section 10 of the general railroad act as amended by the Laws of 1854, chapter 282. This makes a stockholder liable to the creditors of the company to an amount equal to the amount unpaid on the stock held by him, until the whole amount of the capital stock so held by him shall have been paid to the company. It appears that Ames was a subscriber for 200 shares of $100 per share. It does not appear that Dexter was a subscriber for any stock; nor does the referee find that Dexter was the owner of any shares, and

we find no proof on that point. The referee finds that not more than ten per cent of the stock held by Ames and Dexter had been paid on or prior to June 15, 1881. We find no evidence given on that point unless it be the fact that the articles of association state that ten per cent has been paid. The counsel for the plaintiff urges in his brief that, as there was no proof given of subsequent payments, the presumption is that no more had been paid.

If this were an action by the Boston, Hoosac Tunnel and Western Railroad Company against Ames to recover his unpaid subscription, of course it would be for Ames to prove payment as a defense, and not for the company to prove non-payment as a ground of action. But the present action is quite different. It is necessary for the plaintiff, as the first link in the chain, to show affirmatively that Ames and Dexter were still liable on unpaid subscription. He has no right to any presumption, but must prove the fact. This he has not done. Furthermore, he furnishes no proof of Dexter's liability to pay anything ; he does not show him to be a stockholder. Whether under the decision in *Christensen* v. *Eno* (106 N. Y., 97), Dexter would be liable on unpaid stock transferred to him, without any agreement on his part to pay, we need not decide.

There is another difficulty, and that is that the referee only finds that the stock had not been fully paid prior to June 15, 1881. Now, the liability imposed by the statute ceases when the whole amount of the capital stock so held by the stockholder shall have been paid to the company. For anything which appears or is found the stock of Ames and Dexter has been fully paid. It may be said, in answer to this, that the plaintiff's claim against this defendant is based on the liability of Ames and Dexter as it existed February 15, 1881. But that liability was limited as above stated. If the amount payable on their stock should be thereafter paid to the company, Ames and Dexter could not be required to pay it again to creditors. All that creditors can ask in this respect is that the whole amount of stock which has been subscribed should be paid in full either by the subscribers or by some one. When this shall have been paid to the company all liability is respect thereto ceases.

But, again, it seems to be settled in this State that no separate right of action by this plaintiff against Ames and Dexter could be maintained, and that the action must be in equity against all similar stock-

holders (*Griffith* v. *Mangam*, 73 N. Y., 611; *Morgan* v. *N. Y. and A. R. R. Co.*, 10 Paige, 290; *Mann* v. *Pentz*, 3 N. Y., 415); and it may be remarked that, in most cases of that nature, the creditor had previously recovered judgment against the company. But, however that may be, under the decisions last above cited Ames and Dexter did not owe the plaintiff the indebtedness which he claimed to be due from the Boston, Hoosac Tunnel and Western Railroad Company, therefore Burt did not agree with a debtor to pay his debt to a creditor. It was of no benefit to Ames and Dexter that Burt should promise (even if he had directly promised) to pay plaintiff's claim. They would have been none the less liable to pay their unpaid subscriptions to the company, unless, indeed, in the case of insolvency of the company. But such insolvency was not in the contemplation of the parties, for the agreement provides for a consolidation with other companies, and for carrying forward the work. The legal duty of Ames and Dexter was to the company, and not to this plaintiff, alone or with other creditors. In the most favorable view of the contract, Burt's agreement was with persons who might, in some contingency, be made liable to pay to plaintiff an obligation which they owed to the company. If, therefore, the principle is to be applied which plaintiff invokes, Burt would become liable to pay the company the balance due from Ames and Dexter on their stock, if there were any such balance. But Burt did not even agree to do that.

When we examine the contract, however, we fail to find any such obligation. Burt is to pay and discharge all the outstanding indebtedness of said railway company due to said Ames and Dexter and their associates, and to all other parties, " as shown and stated in a schedule hereto annexed." The contents of this schedule are not shown, and, of course, the schedule limits the agreement. Furthermore, there is nothing in the agreement which indicates that Burt was to pay to the railway company any unpaid subscription of Ames and Dexter. As to the plaintiff's claim, the agreement says that Burt was to take the railway with all its existing obligation and contracts, " and to pay all bills as they mature, for said construction as it progresses from this date." By implication, then, he was not to pay past bills, certainly not unless they were set forth in the schedule. The agreement says that Burt was to pay at par in cash

for all of the said stock to be delivered to him. It is hardly to be credited that he was to pay at par in cash for stock on which Ames and Dexter had only paid ten per cent. There is, then, no reason to think that, by this agreement, Burt bound himself to pay this claim of plaintiff or to pay any unpaid subscription of Ames and Dexter. It is for the plaintiff to make out, by clear proof, that Burt agreed to pay one or the other of these amounts.

Burt assigned his contracts with Ames and Dexter to the defendant, and on the 15th of June, 1881, a writing, under seal, was made between defendant, on the one part, as assignee of Burt, and Ames and Dexter on the other. This referred to the contracts and recited that Ames and Dexter had received a certain sum of money and the defendant had received a certain number of shares of stock of the Boston, Hoosac Tunnel and Western Railroad Company, and agreed that the agreements of February 9 and April 9, 1881, had been fully kept and performed by the parties, and all matters had been fairly settled by the parties, and the agreement was to stand as a receipt and acquittance to each from the other.

It is certain, then, that this agreement, the fairness of which is not questioned, fully discharged the defendant from all liabilities incurred by the previous agreements and its acceptance of them. It is not worth while to go over the many cases which have expanded and limited, criticised and explained the case of *Lawrence* v. *Fox* (20 N. Y. 268). The case of *Wheat* v. *Rice* (97 N. Y., 296, and cases there cited) show that this settlement of the parties to the contract barred any right of action of the kind claimed by the plaintiff.

We conclude, then, that if Ames and Dexter had only paid ten per cent of their stock, the balance was owing (by Ames and possibly by Dexter) to the company. The plaintiff might, in some contingencies, have any unpaid balance applied to his debt. But he was not a creditor of Ames and Dexter. Burt's agreement with Ames and Dexter did not make him liable to pay this unpaid balance. He did not contract with the company to pay any of its debts, and it does not appear that plaintiff's claim was among those debts of the company which he agreed with Ames and Dexter to pay. It is not shown that the whole of Ames and Dexter's stock has not since been paid. The settlement between defendant and Ames and Dexter bars plaintiff's right, if any he had.

The judgment, therefore, must be reduced to $1,230, and interest from November 15, 1882, that being the amount of the first claim, with the costs below. Neither party to have costs of the appeal.

LANDON and INGALLS, JJ., concurred.

Judgment affirmed as to the first claim and reversed as to second; reducing judgment to $1,230, and interest from November 15, 1882, with costs below; no costs of appeal to either party.