CLARISSA WEATHERWAX CONKLING, Appellant, v. JOHN T. WEATHERWAX, Defendant, EMILY A. TOMPKINS, Appellant, and HANNAH M. HIDLEY, Respondent, Impleaded with Others.

1. EVIDENCE — WHEN DECLARATIONS OF DECEASED MORTGAGOR ARE INCOMPETENT TO AFFECT LIEN OF MORTGAGE. In an action to enforce a legacy as a lien upon real property, brought over thirty years after the death of the testator, the oral declarations of a deceased devisee, who had mortgaged the property, to the effect that the legacy had not been paid, are incompetent to affect or defeat the lien of the mortgage where there is no identity of interest between the mortgagor and mortgagee.

2. PLEADING — ALLEGATION AND PROOF OF PAYMENT. Such an action is not based upon an instrument for the payment of money, and the burden of proving non-payment rests upon the plaintiff. The authorities relating to the burden of proof as to payment collated and discussed.

*Conkling v. Weatherwax,* 90 App. Div. 585, affirmed.

(Argued March 10, 1905; decided April 18, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 16, 1904, reversing a judgment in favor of appellants herein entered upon a decision of the court on trial at Special Term and granting a new trial.

This action was brought to establish and enforce a legacy as a lien upon real estate and on the trial the following facts appeared: Henry Weatherwax, a resident of the county of Rensselaer, died on the 8th of May, 1868, leaving a will which was dated March 14th, 1863, and was admitted to probate on the 3rd of September, 1868. He left a widow and three children, a son, Charles, now deceased, and two daughters, the plaintiff Clarissa and the defendant Emily. His property consisted mainly of the farm upon which he resided in his lifetime and the personal property connected therewith. By his will he directed Charles, his sole executor, in lieu of dower, to provide for his widow "out of the profits of" his farm in various ways and among others by paying her $150 per year during her widowhood and allowing her to occupy a

part of the dwelling house on the premises.   He gave the plaintiff a legacy of $1,000, " to be paid   *   *   *   two years after" his decease, " out of my said farm by my executor," and to the defendant Emily a like amount, payable out of the farm by his executor twelve years after his decease.   The latter bequest was reduced to $800 by a codicil dated January 16th, 1866, and admitted to probate with the will.   He gave his farm and the personal property to Charles after the payment of his debts, funeral expenses and the said legacies, but provided that he should " not have the right to sell or dispose of" the same " during the widowhood of his mother without" her consent.

These facts were alleged in the complaint and proved upon the trial.   It was also alleged that the plaintiff had demanded payment of her legacy and that the same was wholly unpaid. It was further proved that on the first of May, 1884, the said Charles gave a mortgage, collateral to his bond, in the usual form, upon the farm to the defendant Hidley to secure the sum of $3,000, and that no part of the principal thereof had been paid.   Charles died July 5th, 1900, leaving a will by which he gave all his property to his son, the defendant John .T. Weatherwax, to whom letters testamentary were duly issued on the 27th of August, 1900.   The widow of Henry Weatherwax died on the 15th of February, 1892, having never remarried.   This action was commenced on the 23rd of August, 1900, and subsequently John T. Weatherwax, as executor, was brought in by a supplemental summons.

The defendant Hidley by her answer denied that said legacies had not been paid, and denied 'that they were liens upon the real estate.   As a separate defense she alleged that the legacies had been paid, and pleaded the lapse of the various periods of limitation prescribed by statute within which an action may be commenced.

The trial judge found that the legacies had not been paid and that the amount due thereon, including interest from the date when the widow died, was the sum of $1,661 to the plaintiff and $1,328.80 to the defendant Emily.   He also

found that each legacy was a lien on the real estate; that the farm should be sold and the proceeds, after payment of costs, paid over to the plaintiff and her sister to the extent of their respective liens. The judgment entered accordingly was reversed by the Appellate Division, one of the justices dissenting, and the plaintiff and the defendant Emily Tompkins both appealed to this court.

*Henry D. Merchant* and *Abel Merchant, Jr.*, for appellants. The existence of the legacies and of the lien was established by the will and the legatees were not required to produce additional proof that the legacies " remained " unpaid, and the declarations which were objected to had no material effect upon the issue of payment, as the defendant offered no evidence upon any of the issues. (*Conkling* v. *Weatherwax,* 173 N. Y. 43; Code Civ. Pro. § 1819; *Dibble* v. *Dimick,* 143 N. Y. 549; *Hicks* v. *Walton,* 14 App. Div. 199; *Cochran* v. *Reich,* 91 Hun, 440; *Meagley* v. *Hoyt,* 125 N. Y. 771; *Salisbury* v. *Stinson,* 10 Hun, 242; *Lent* v. *N. Y. & M. R. Co.,* 130 N. Y. 504, 513; *Selover* v. *Coe,* 63 N. Y. 438; *Brater* v. *Hopper,* 77 Hun, 244; *Austin* v. *Goodrich,* 49 N. Y. 266.) The declarations made by Charles Weatherwax would have been competent against him and the estate of which he was executor, and were equally competent against his mortgagee because she had not perfected any rights against the legatees by giving notice of her mortgage and she is, therefore, confined to the same rights and rules of evidence that would have been available to Charles Weatherwax, her mortgagor, if he, instead of herself, were interposing objection. (*Davis* v. *Gallagher,* 124 N. Y. 487; *Church* v. *Howard,* 79 N. Y. 415; *Holly* v. *Gibbons,* 176 N. Y. 520; *N. Y. L. Ins. & T. Co.* v. *Covert,* 6 Abb. Pr. [N. S.] 154; *Hughes* v. *Edwards,* 9 Wheat. 489; *Heyer* v. *Pruyn,* 7 Paige, 465; *Murdock* v. *Waterman,* 145 N. Y. 55.)

*Robert E. Whalen* for respondent. The trial court erred in receiving and in refusing to strike out the testimony of

Messrs. Merchant and Tompkins as to oral admissions or declarations of Charles Weatherwax, relative to the non-payment of the legacies in suit. (*Walton* v. *Chesebrough*, 57 N. Y. Supp. 687; *McCotter* v. *Lawrence*, 4 Hun, 107; *Esselstyn* v. *Weeks*, 12 N. Y. 635; *Duane* v. *Paige*, 31 N. Y. Supp. 310; *Foote* v. *Beecher*, 12 Hun, 374; *Man* v. *Snow*, 32 N. Y. S. R. 356; *Padgett* v. *Lawrence*, 10 Paige, 170; *Vrooman* v. *King*, 36. N. Y. 477; *Jones* v. *Jones*, 137 N. Y. 610; *Williams* v. *Williams*, 142 N. Y. 156.) Such admissions or declarations cannot be rendered competent upon the theory that they were made by Charles Weatherwax, as executor, and not individually. (*Moores* v. *White*, 6 Johns. Ch. 360; *Elwood* v. *Diefendorf*, 5 Barb. 398; *Colson* v. *Brainard*, 1 Redf. 324; *Renwick* v. *Renwick*, 1 Bradf. 234; *Burnham* v. *Burnham*, 46 App. Div. 513; *People* v. *O'Neill*, 112 N. Y. 355; *Scheir* v. *Quirin*, 77 App. Div. 624; *More* v. *Finch*, 65 Hun, 404; *De Pierris* v. *Slaven*, 5 App. Div. 147; *Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 N. Y. 274.) Whether the burden herein be upon the legatees to affirmatively establish non-payment of their legacies, or upon Mrs. Hidley to prove payment thereof, in either event the reception and retention of the objectionable testimony of the witnesses Merchant and Tompkins were prejudicial to Mrs. Hidley. (*Rundle* v. *Allison*, 34 N. Y. 180; *Drake* v. *Wilkie*, 30 Hun, 537; *Austin* v. *Goodrich*, 49 N. Y. 266; *Cochran* v. *Reich*, 91 Hun, 440; *Nat. Bank* v. *Rogers*, 44 App. Div. 357; *Meagley* v. *Hoyt*, 125 N. Y. 771; *Lent* v. *N. Y. & M. Ry. Co.*, 130 N. Y. 504; *Van Giesen* v. *Van Giesen*, 10 N. Y. 316; *Knower* v. *Reynolds*, 99 N. Y. 245; *McKyring* v. *Bull*, 16 N. Y. 297.)

Vann, J. When this action was before us on a previous appeal no question arose as to the payment of the legacies, or as to the evidence by which such payment was regarded as established. The main controversy then related to the priority of the liens upon the assumption that they were all unpaid, and we held that the lien of the legacies was prior and superior to that of the mortgage. (*Conkling* v. *Weatherwax*, 173 N. Y.

43.) Our judgment of reversal opened the issue as to the payment of the legacies, and upon the trial now under review the plaintiff assumed the burden of proving the allegation in her complaint that her legacy had not been paid. Apparently she found it a matter of some difficulty, owing to the lapse of thirty-two years since the death of her father, and of more than thirty years since her legacy became due. Her brother Charles was dead, and neither she nor her sister were sworn, as both were regarded as incompetent to testify. The only evidence she produced upon the question of payment consisted of the declarations of her deceased brother, the devisee and mortgagor of the farm, made in June, 1900, when payment of the legacies was demanded of him, as the executor of his father's will. The witness who made such demand was allowed to testify that Charles said in substance that the legacies had not been paid, although objection was duly made by the defendant Hidley upon the ground that the unsworn statements of the mortgagor, made in her absence years after the execution and delivery of the mortgage to her, were hearsay, incompetent and not binding upon her. The objection was overruled and the defendant excepted.

The oral declarations of a deceased mortgagor, which have no relation to the *res gestæ* or to the character or extent of his possession of the realty, made in the absence of the mortgagee many years after the mortgage was given, are incompetent to affect or defeat the lien of the mortgage when there is no identity of interest between the mortgagor and mortgagee. (*Foote* v. *Beecher*, 78 N. Y. 155; *Merkle* v. *Beidleman*, 165 N. Y. 21; *Vrooman* v. *King*, 36 N. Y. 477; *Padgett* v. *Lawrence*, 10 Paige, 170; *Paige* v. *Cagwin*, 7 Hill, 361; *Duane* v. *Paige*, 31 N. Y. Supp. 310; *Man* v. *Snow*, 32 N. Y. St. Rep. 356; *Burlingame* v. *Robbins*, 21 Barb. 327, 329.) Such testimony is a mere narrative by a third party of a past event and violates the rule which excludes hearsay evidence, requires the sanction of an oath and secures the right of cross-examination. It would open the door to fraud, promote litigation and render titles insecure. No owner of a mortgage

would feel safe and the value of securities in general use would be seriously impaired. There was no identity of legal obligation between the mortgagor and mortgagee, so as to bring the declarations of the former within the exception founded upon a community of interest. (2 Wigmore on Ev. § 1077.) Mrs. Hidley claimed under Charles as devisee and was not in privity with him as executor and he could not take away her estate by his admissions made in any capacity. (*Mooers* v. *White*, 6 Johns. Ch. 360, 373; *Elwood* v. *Diefendorf*, 5 Barb. 398, 407; *Burnham* v. *Burnham*, 46 App. Div. 513, 514.)

It is insisted, however, that while the objection taken to this testimony was good, the ruling did no harm because the evidence was immaterial, as payment is an affirmative defense and the burden of proving it was upon the defendant. This raises a mooted and difficult question, for the law upon the subject of alleging and proving payment is in some confusion. Quite recently it was held in an action upon contract that the plaintiff need not prove the negative fact of non-payment and that the defendant had the burden of establishing payment. (*Lerche* v. *Brasher*, 104 N. Y. 157, 161.) No authority was cited and the discussion was limited, but the point was distinctly presented and decided. To the same effect are *Keteltas* v. *Myers* (19 N. Y. 231); *Salisbury* v. *Stinson* (10 Hun, 242); *Ralley* v. *O'Connor* (71 App. Div. 328), and *Hicks-Alixanian* v. *Walton* (14 App. Div. 199).

On the other hand, it has been held more recently, in an action at law, but not upon contract, that an allegation of non-payment is essential and that without it the complaint is subject to demurrer for failing to state facts sufficient to constitute a cause of action. (*Lent* v. *N. Y. & Mass. Ry. Co.*, 130 N. Y. 504.) This case was carefully considered and many leading authorities were reviewed, to which we will make no further reference. It was said that breach of contract is the essence of the cause of action and that non-payment is "a fact material to the plaintiff's cause of action and essential to be proved to entitle the plaintiff to a judgment." Since the question arose upon a demurrer to the complaint, the state-

ment as to the necessity of proving the allegation of non-payment might be regarded as *obiter*, were it not for the general rule that whatever it is necessary to allege it is necessary to prove. At any rate, the decision stands as the law in relation to the necessity of alleging a breach of the obligation by failing to pay it, and the logical result is that the burden of proof rests upon the party compelled to so allege. The case of *Lerche* v. *Brasher* was not considered and it does not appear to have been called to the attention of the court.

In *Cochran* v. *Reich* (91 Hun, 440) it was held necessary to allege and prove non-payment in an action for breach of a covenant to pay rent reserved in a lease. (See, also, *Krower* v. *Reynolds*, 99 N. Y. 245, 249; *Tracy* v. *Tracy*, 35 N. Y. St. Rep. 167, and *Witherhead* v. *Allen*, 4 Abb. Ct. App. Dec. 628, 633.)

The conflict of authority extends to other states. (*State ex rel. Spaulding* v. *Peterson*, 142 Mo. 526; *Wheeler & Wilson Mfg. Co.* v. *Tinsley*, 75 Mo. 458; *McElwee* v. *Hutchinson*, 10 S. Car. 436; *Hubler* v. *Pullen*, 9 Ind. 273; *Frisch* v. *Caler*, 21 Cal. 71; *Garretson* v. *Bitzer*, 57 Iowa, 469; *Junge* v. *Bowman*, 72 Iowa, 648; *Esbensen* v. *Hover*, 3 Col. App. 467.)

An effort has been made to establish as the true rule " that the plaintiff should prove, not non-payment generally, but non-payment when due or at maturity, or, in other words, a breach of the contract sued on," leaving it to the defendant to allege, as new matter, payments made after the breach. (16 Enc. Pl. & Pr. 179; *Douglass* v. *Central Land Co.*, 12 W. Va. 508; *Powesheik County* v. *Mickel*, 10 Iowa, 76.)

The learned Appellate Division drew a distinction between actions at law and suits in equity in regard to the burden of proving, in the first instance, payment or non-payment. It declared that " the distinction in the rule as to proof of non-payment in equitable actions to enforce a lien and in ordinary actions for recovery of money, is shown by the fact that in an action for the foreclosure of a mortgage given as collateral to a bond, non-payment upon the bond must be proved, while in an action on the bond alone this is unnecessary." The follow-

ing authorities, cited in support of this position, tend to sustain it. (*Coulter* v. *Bower*, 11 Daly, 303, Van Brunt, J.; *Davies* v. *N. Y. Concert Co.*, 41 Hun, 492, Daniels, J.)

While in an action upon contract for the payment of money only the allegation and proof of the promise and that it has matured creates the presumption of non-payment and throws the burden of proving payment upon the one who asserts it, there are certain cases in which proof of non-payment is essential to a recovery, because it is part of the cause of action. Such was *Knapp* v. *Roche* (94 N. Y. 329), where the receiver of an insolvent savings bank sought to recover damages from its officers on account of illegal loans made by them. It was held insufficient to allege and prove the illegal loans merely and that it was necessary to show that the loans had not been paid.

*Lent* v. *N. Y. & Mass. Ry. Co.* (*supra*) belongs to the same class, for that was an action upon an award made by commissioners in a proceeding to condemn lands for railroad purposes. Where one sues for a balance of indebtedness for services performed at an agreed price over and above all payments made, no payment being specified, a general denial permits proof of payment without pleading it, because the plaintiff voluntarily invited "examination into the amount of indebtedness and the extent of the reduction thereof by payments." (*Quin* v. *Lloyd*, 41 N. Y. 349.)

In *White* v. *Smith* (46 N. Y. 418) the complaint set forth an account for work, labor and services amounting to the sum of $541.90 and alleged a balance due of $175.75, after deducting all payments, and it was held that the defendant, under a general denial, could prove such payments as he had made. The "balance due" could not be ascertained without going into the subject of payment.

In an action against the individual members of a joint-stock association under a statute authorizing a recovery after the remedy at law against the company itself had been exhausted (L. 1853, ch. 153), a complaint which alleged an indebtedness against the company for goods sold and deliv-

ered was held defective upon demurrer, because there was no allegation of non-payment. (*Witherhead* v. *Allen*, 4 Abb. Ct. App. Dec. 628, 633.)

In *Krower* v. *Reynolds* (99 N. Y. 245, 249), which was an action on a covenant to pay a mortgage, Judge Andrews, speaking for the court, said: " The complaint does not contain the averments necessary to a complete cause of action on the covenant. It alleges the making and the consideration of the covenant and that the defendant thereby became liable to pay the mortgage. But there was no breach alleged. This was necessary." (Citing *Marie* v. *Garrison*, 83 N. Y. 23.) The same rule was laid down in *Schlesinger* v. *Hexter* (2 J. & S. 499, 503). So in the foreclosure of mortgages and mechanics' liens, as well as in the enforcement of all other liens, including creditor's actions, the practice of alleging and proving the amount due and unpaid is universal, for otherwise there is no lien to enforce. Proof that a lien once existed does not prove that it still exists, and the cause of action rests upon the existence of the lien when the action is commenced. Hence the complaint must allege and the evidence must show that there is a lien on the property at the time when the effort is made to sell it in order to pay the lien. (2 Jones on Mortgages, §§ 1452, 1471, and cases cited.)

The action now before us was not brought to recover damages for the breach of a contract to pay money, or for the breach of any contract. No effort was made to recover the amount of the legacies from the executor under the Code of Civil Procedure, or from the devisee or his estate upon the ground that by accepting the devise he became liable personally to pay the legacies. The plaintiff does not seek to enforce a personal obligation against any one, but to foreclose a lien upon land. The action is in the nature of a proceeding *in rem.* It was necessary for the plaintiff to establish the lien, not as one in existence over thirty years ago, but as existing when the action was brought. One of the parties defendant and the only one who joined issue with the plaintiff, was the owner of a mortgage subsequent in lien to her legacy, if that

was still unpaid. That party was in no position to know, unless by hearsay, whether the legacy had been paid or not, while the subject was within the peculiar knowledge of the plaintiff and her family. The loan secured by the mortgage in question was large enough to pay all the legacies, yet it did not appear what was done with the money. The right of the plaintiff to her legacy arose over thirty years before the action was brought, which gave rise to a presumption of fact that it had been paid. (*Macaulay* v. *Palmer*, 125 N. Y. 742; *Bean* v. *Tonnele*, 94 N. Y. 381; *Jackson* v. *Sackett*, 7 Wend. 94; *Jackson* v. *Pierce*, 10 Johns. 413, 417; Lawson on Presumptive Ev. 370, 382; Buswell on Limitations, § 335; Jones on Mortgages, § 915.)

"An unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself," and "it is the law of courts of equity, independent of positive legislative limitations, that they will not entertain stale demands." (*Bean* v. *Tonnele*, 94 N. Y. 381, 386; *Matter of Neilley*, 95 N. Y. 382, 390; *Calhoun* v. *Millard*, 121 N. Y. 69, 82.) The time of payment "was fixed by the testator not with reference to his wife's death but his own," although the farm could not be sold during her life without her consent. The testator doubtless intended that the legacy should be paid out of the income from the farm and the time of payment was postponed for that purpose. More than thirty years had passed after the legacy was made payable by the terms of the will before this action was commenced.

The existence of this lien depended upon the will which made the legacy a charge upon the land and the fact that the land had not been relieved by payment of the charge. A legacy which had been paid would not support the action, because there would be no lien. The same is true of a legacy presumed as matter of fact to have been paid in the absence of evidence to rebut the presumption. Under these circumstances it was necessary to prove non-payment the same as in an action upon a stale demand or of foreclosure or upon a covenant to pay a mortgage or to recover against the officers

of a bank or the members of a joint-stock association in the cases cited.

I think, however, that we should go farther and attempt to reconcile the conflict of authority upon the general subject by laying down the following rules as fairly deducible from the adjudged cases:

1. In an action upon contract for the payment of money only, where the complaint does not allege a balance due over and above all payments made, it is sufficient for the plaintiff to allege and prove a breach of the obligation by the non-payment thereof when it matured, as the presumption of non-payment continues until met by the allegation and proof of payment.

2. When the complaint sets forth a balance in excess of all payments, owing to the structure of the pleading, it is necessary for the plaintiff to prove the allegation as made and this leaves the amount of the payments open to the defendant under a general denial.

3. When the action is not upon contract for the payment of money, but is upon an obligation created by operation of law, or is for the enforcement of a lien where non-payment of the amount secured is part of the cause of action, it is necessary both to allege and prove the fact of non-payment.

The case before us falls under the third paragraph of this classification, and hence the exception to the ruling which admitted the declarations of the deceased mortgagor against the objection of the mortgagee, raised reversible error, aside from the effect of such evidence in tending to rebut the presumption of payment from the lapse of time. The order of the Appellate Division should be affirmed and judgment absolute rendered against the appellants upon their stipulation, with costs in all courts.

CULLEN, Ch. J. I concur with Judge VANN in the view that the declarations of the mortgagor that the legacy had not been paid were incompetent as against the mortgagee. I also concur with my brother in the proposition that the lapse of

time created a presumption that the legacies, which are the subject of the action, had been paid or, at least, that the trial court might so find. The admission of incompetent evidence (the only evidence on the question) to rebut this presumption was, therefore, a vital error for which the judgment of the Special Term was properly reversed by the Appellate Division.

I dissent, however, from the doctrine that the burden of proof rested upon the plaintiff to establish the non-payment of an obligation for the payment of money. While it is necessary that the complaint should allege the breach of such an obligation, to wit, a failure to pay the money owing thereon (*Lent* v. *N. Y. & Mass. Ry. Co.*, 130 N. Y. 504; *Krower* v. *Reynolds*, 99 N. Y. 245, 249), it seems the settled law of the state that, except where the complaint declares generally on an indebtedness, a general denial does not put in issue the allegation of non-payment, but to admit proof of payment the defendant must plead payment. (*McKyring* v. *Bull*, 16 N. Y. 297; *Quin* v. *Lloyd*, 41 N. Y. 349.) It may be that the fact that payment must be affirmatively pleaded does not conclusively establish that the burden of proof is necessarily upon the defendant to establish his plea, though the general rule is that the issue is to be proved by the party who asserts the affirmative. (1 Phillips on Ev. [Cowen and Hill] sec. 810.) I frankly concede that it is somewhat illogical that the plaintiff should be obliged to allege non-payment and yet the defendant be required to affirmatively prove payment, but it is equally illogical to require the plaintiff to prove non-payment when a general denial does not put that allegation in issue, and the defendant is required to plead payment. I shall, therefore, refrain from attempting to deduce the answer to the question, on which party the burden of proof rests, from any rule as to pleading as such answer would be necessarily illogical. I shall confine myself to the decisions of the courts of this state on the exact point on which party the burden rests. In an action on a contract for the payment of money, where the issue was payment, I have never known the jury to be instructed other than that the burden of proof was on

the party alleging payment to prove that fact, and I think such has been the almost universal view taken by the courts. In fact, the doctrine has been so generally accepted that usually it has been assumed without discussion. In *McKyring* v. *Bull* (*supra*) Judge SELDEN said that payment, like a release, accord and satisfaction, arbitration, etc., was new matter constituting a defense, thus classifying payment with a release, as to the proof of which, unquestionably, the burden rests on the party pleading it. *Lerche* v. *Brasher* (104 N. Y. 157) was an action against an administrator to recover for services rendered to the deceased in his lifetime. On the trial the plaintiff was permitted to testify that he had not been paid for his services by the deceased. It was held that the admission of this testimony was erroneous as the plaintiff was incompetent to testify to a personal transaction with the deceased, but it was further held to be harmless as the plaintiff was not required to prove the negative, and that payment was an affirmative defense the burden of establishing which rested upon the defendant, in support of which no evidence had been given. This seems the only case in this court in exact point. The decisions, however, in the lower courts are numerous. In *Claflin* v. *New York Standard Watch Co.* (7 Misc. Rep. 668), which was an action on a promissory note, defense payment, it was held by the General Term of the late Court of Common Pleas of the city of New York that the defendant was properly allowed to open and close the case because payment was an affirmative defense, the burden of proving which rested upon it. In this connection there may be noted the case of *Mead* v. *Shea* (92 N. Y. 122). The first cause of action was on two promissory notes, to which the defendant pleaded payment; the second for goods sold, to which the defendant pleaded a general denial. When the evidence was closed the trial court held that the cause of action for goods sold was not sufficiently established to warrant its submission to the jury, and the case went to the jury on the issue of payment of the notes. Prior to the close of the testimony the counsel for the defendant asked the court to rule that it had the affirmative of the issue, which the

court denied.    On appeal it was contended that the refusal of
the trial court to award the defendant the closing address to the
jury was error.    This court overruled the claim, holding that
the defendant's application should have been made at the close
of the case; that when it was made there was an issue of fact
on which the plaintiff held the affirmative, and, therefore, the
defendant's request was properly denied.    It was undoubtedly
assumed by the court that payment was an affirmative defense
or otherwise it would have been entirely unnecessary to dis-
cuss and determine the proper time at which the defendant's
application should have been made.    In *Hussey* v. *Culver* (6
New York Supplement 466) it was held by the General Term
of the first department that payment is an affirmative defense,
the burden of establishing which rests upon the defendant.
The same rule was held by the General Term of the fifth depart-
ment in *Taber* v. *Supervisors of Erie* (14 N. Y. Supp. 211).
In *Wellington* v. *Continental C. & I. Company* (52 Hun,
408) the action was brought by a creditor against stockholders
of an insolvent corporation to enforce their liability for unpaid
subscriptions to stock under section 282 of the Laws of 1854
(General Railroad Act).    It was held that in such an action
it was necessary for the creditor to prove that the stockholder
was in default, but said Judge Bookes, writing for the third
department: "If this were an action by the Boston, Hoosac
Tunnel and Western Railroad against Ames to recover his
unpaid subscriptions, *of course* it would be for Ames to
prove payment as a defense, and not for the company to
prove non-payment as a ground of action."    Many other cases
might be cited.    It will be seen that in none of these cases is
there any citation of authority for the proposition that pay-
ment must be affirmatively proved.    It is assumed as settled
law.    Against this uniform current of authority there can be
cited but a single case which is exactly in point; that is *Coch-
ran* v. *Reich* (91 Hun, 440).    Before dealing with it I will
refer to the other cases cited by my associate.    *Witherhead* v.
*Allen* (4 Abb. Ct. App. Decisions, 628) arose on demurrer and
involved merely a question of pleading.    It was an action

brought against the members of a joint-stock company after judgment and return of execution unsatisfied against the president of the company. It was held that the complaint must state a good cause of action against the members of the company on the original claim in the same manner as in the suit brought against the officer of the company, and, therefore, that a failure to pay for the goods sold must be alleged. This is simply the rule of pleading declared in the *Krower* and *Lent* cases. *Knapp* v. *Roche* (94 N. Y. 329) was an action against the officers of an insolvent savings bank for negligence and misconduct in making improper loans of the funds of the bank. It was held incumbent upon the plaintiff to prove that those loans had not been repaid. The case had no bearing on the principle under discussion. The loans created no obligation on the part of the defendants to repay the same; their liability arose from the fact that they should not have made the loans, and, of course, that liability was limited to the loss occasioned by their action. If the defendants had admitted their liability to the bank or its receiver and pleaded that they had paid the amount of such liability then the case would be in point. *Krower* v. *Reynolds* (*supra*) was an action brought on a deficiency judgment recovered against the defendant in New Jersey, on his assumption of a mortgage on certain real estate there situated. The defendant admitted the bond and mortgage and the deed containing his covenant to assume payment of the same, and denied the remaining allegations of the complaint. On the trial the plaintiffs proved their appointment as executors of the deceased mortgagee without proving the New Jersey judgment. A motion for a nonsuit was denied and judgment given against the defendant. On appeal it was sought to sustain this recovery on the theory that the cause of action was made out by the defendant's admission of his covenant to pay the mortgage. This court held that the action was on the New Jersey judgment, not on the covenant, saying that the complaint failed to state a good cause of action on the covenant because it did not allege any breach of the same. The case simply goes to the question of pleading.

*Lent* v. *N. Y. & Massachusetts Railway Company* (*supra*) is also an authority on the question of pleading. It arose on a demurrer to the complaint which alleged an award to the plaintiff in condemnation proceedings, but failed to allege non-payment of the award. There was nothing decided in the case that deals with the question now before us, and its sole application arises out of a single sentence excerpted from the opinion without reference to the general context. The distinguished judge who there wrote for the court said : " But no reason is apparent how it can justify the omission from the complaint of a fact material to the plaintiff's cause of action, and essential to be proved to entitle the plaintiff to a judgment." The statement that it was necessary to prove non-payment to entitle him to judgment was wholly *obiter*, for there was no question of the kind in the case. On this excerpt is based the decision of the General Term of the Supreme Court in *Cochran* v. *Reich*, already alluded to. To that decision must be accorded the merit of logic and entire consistency. The action was to recover for the breach of a covenant to pay rent reserved in the lease. The complaint alleged default in such payments. The answer was a general denial. On the trial the plaintiff introduced no evidence of non-payment and, no evidence of payment having been given by the defendant, recovered judgment. The learned trial court, while conceding that the plaintiff's contention was not without " comfort " to be found in the opinions in the *Lent* and *McKyring* cases, held, first, that as it was necessary to allege non-payment a general denial put that in issue ; and, second, that it was necessary to prove what it was necessary to allege. However logical this decision may be it plainly conflicts with the settled law of this state, that payment, when the plaintiff declares on a specific obligation, must be pleaded, for that was expressly held in the *McKyring* case, and Judge Brown in the *Lent* case concedes the binding authority of the earlier decision. From this review of the cases there appears to be no confusion in the law of this state on the question before us, save that

18

raised by *Cochran* v. *Reich* which was expressly retracted by the Appellate Division of the first department in *Hicks-Alixanian* v. *Walton* (14 App. Div. 199), the learned judge who wrote the opinion in the earlier case concurring in the decision in the later one.   Nor is the rule different in an action in equity.   *Coulter* v. *Bower* (11 Daly 203) is also merely an authority on the question of pleading.   The complaint for the foreclosure of mortgage was held bad on demurrer for failure to allege a breach of its conditions. *Davies* v. *N. Y. Concert Company* (41 Hun, 492) was likewise an action to foreclose a mortgage.   That mortgage, however, was given by a corporation and contained special provisions not found in ordinary mortgages given by individuals, though not uncommon in those given by corporations.   As pointed out by Judge DANIELS, writing for the General Term of the first department, it was not every default in the payment of the coupons or bonds secured by that mortgage that authorized a foreclosure.   How far that case is aside from any question now before us appears from the fact that the complaint, which was held insufficient, expressly alleged " and that said coupons were not paid at maturity, nor was any of them paid, or any part thereof."   I may also suggest that if the *obiter dictum* in the *Lent* case is to be considered an authority it is at least neutralized by the very recent declaration of this court in *Heilbronn* v. *Herzog* (165 N. Y. 98).   The action was to recover the price of goods sold and delivered; the defense that the sale was on credit which had not expired. It was held that the defense was an affirmative one entitling the defendant to the opening and closing of the case, and Judge WERNER, writing for the court, said : " Like the defense of payment, it must not only be pleaded, but proved."   I am not certain that this declaration was *obiter,* but conceding it to be such there is a fair set-off, *obiter* against *obiter.*

As to the law in other states, it is said in the American and English Encyclopædia of Law (Vol. 22, p. 587): " The general rule is well settled that payment is an affirmative defense and will not, in the first instance, be presumed, but after the ante-

cedent existence of the indebtedness has been proved by the creditor, the burden of proving its discharge by payment is upon the debtor or person alleging the payment." It would be impossible, within the limits of an opinion, to review all the authorities cited to support the text. It will be sufficient to refer to a few which are found in the leading states. In Massachusetts, in an action on a contract for the payment of money or to perform some duty, the plaintiff is not bound to give evidence of non-payment, but it is incumbent on the defendant to prove payment or performance, the court saying: "The objection that the plaintiff gave no evidence of non-performance is against first principles." (*McGregory* v. *Prescott*, 59 Mass. 67; *Jewett* v. *Draper*, 88 Mass. 434.) In Vermont the burden of proof is on the defendant to establish payment and this burden is not shifted by any evidence he may offer. (*Terryberry* v. *Woods*, 69 Vt. 94.) In New Jersey, in an action to foreclose a mortgage, where the defense is payment, the burden of proof is on the plaintiff, showing the rule is the same in equity to enforce a lien as at law on a contract to pay. (*McKinney* v. *Slack*, 19 N. J. Eq. 164; *Smith* v. *Burnet*, 17 id. 40.) Such is also the rule in Pennsylvania (*Shrader* v. *U. S. Glass Co.*, 179 Pa. St. 623) and in Illinois (*Graham* v. *Anderson*, 42 Ill. 514; *Chapin* v. *Billings*, 91 Ill. 539). The authorities last cited also present the rule as applied to the cases of liens. Nor do I think that the cases referred to by my associate cast any doubt on the general rule or present any conflict of authority. *State ex rel. Spaulding* v. *Peterson* (142 Mo. 526) and *Wheeler & Wilson Mfg. Co.* v. *Tinsley* (75 Mo. 458) were not mere obligations or contracts for the payment of money in the ordinary sense of those terms, but indemnity bonds conditioned for the faithful discharge of his duties, in the one case by a public officer and in the other case by a private agent. Of course, in those cases, in order to establish a breach of the bond it was necessary for the plaintiff to prove not only the receipt of the money by the agent or officer, but his failure to account for it. Doubtless the same would be the law in this state. But "when a debt is once shown to have existed it is presumed to

remain unpaid until the contrary is shown or until the presumption is rebutted by the Statute of Limitations or by the lapse of time. (*Carder* v. *Primm*, 47 Mo. App. 301.) *McElwee* v. *Hutchinson* (10 S. C. 436) presented merely the question of pleading, not that of burden of proof, and enunciates substantially the same doctrine as that declared by this court in *White* v. *Smith* (*supra*). *Hubler* v. *Pullen* (9 Ind. 273) again presented a question of pleading, and the court declared that while the complaint may aver non-payment the plaintiff need not prove it, but the defendant must plead and prove payment, a general denial not being sufficient to raise the issue. In *Godfrey* v. *Crisler* (121 Ind. 203) it was expressly decided that the burden of proof is upon the party who alleges payment. *Powesheik County* v. *Mickel* (10 Iowa, 76) and *Stacy* v. *Stichton & Co.* (9 Iowa, 399) involved only a question of pleading and it was held that a replication was not necessary to a plea of payment. The court, however, conceded that the defendant could not prove payment under the general issue. In *Garretson* v. *Bitzer* (57 Iowa, 469) the plea of the defendant was not payment, but he alleged that the contract between the parties differed from that declared on by the plaintiff. The general rule in Iowa is the same as that which prevails in other states. In *Junge* v. *Bowman* (72 Iowa, 648) it was held that where the execution of the note and mortgage is admitted it is incumbent upon the defendant, if he relies on payment, to aver and prove it. I have been unable to find a single case (I do not say there is none) in which it has been held or suggested that the burden of proof is upon a plaintiff to prove non-payment of a contract or obligation for the payment of money. I do not see that there is any confusion in the law in other states on this question, and the only confusion that exists in this state is caused by the solitary discordant note sounded in *Cochran* v. *Reich* (*supra*).

The suggestion is made in the Encyclopædia of Pleading and Practice (Vol. 16, p. 179) that the true rule is " that the plaintiff should prove not non-payment generally, but non-

payment when due or at maturity, or in other words a breach
of the contract called on," leaving it to the defendant to allege
his new matter, payment after the breach, and this suggestion
seems to meet with the approval of my associate. I cannot
find any authority for such a rule. The text writer refers to
*Douglass v. Central Land Company* (12 W. Va. 508) in sup
port of his suggestion. I find nothing in the case to sustain
it. The case itself principally involved the question of plead-
ing and the court held that a plea of payment should con-
clude "to the country." In the discussion of the opinion the
court enunciates substantially four propositions: 1, that the
complaint must allege non-payment; 2, that the defendant
must affirmatively plead payment; 3, that though it is neces-
sary for the plaintiff to allege non-payment and that alle-
gation is put in issue by the defendant's plea of payment,
it is not necessary for the plaintiff to prove that which it is
necessary to allege, to wit, non-payment, but, 4, the burden is
upon the defendant to prove payment. From this it would
appear that the law in West Virginia presents the same para-
dox that is found in the law in this state. I imagine, how-
ever, that the paradox is not confined to either that state or
our own, but exists to a greater or less degree is most jurisdic-
tions which follow the common law. A legal paradox is not
to be commended and if we were about to develop a new
system of jurisprudence, should be carefully avoided. It does
not, however, necessarily create a confusion in the law if
courts will only stand by their decisions. This is especially
true where the questions involved relate merely to pleadings
or procedure and not to substantial rights. In the present
discussion the only question of substantial right is that as to
the party on whom lies the burden of proof. The question
of pleading is of very slight importance. It is of little con-
sequence how it is settled provided it stays settled. If there
is to be any attempt to make the law on the question of plead-
ing and proof of payment consistent (which at this late day I
think unwise), pleading should be subordinated to proof, not
proof to pleading. It may also be suggested that the existing

rule as to pleading and proving payment is not anomalous in the law of evidence. In an action to recover a penalty for selling liquor without a license it is necessary to allege the want of a license but it is not necessary to prove it. On the contrary, the defendant must prove his license if he has one. (*Potter* v. *Deyo*, 19 Wend. 361.) The same rule prevails in most of the states, even in criminal prosecutions for that offense. (See cases cited in note, Bishop on Statutory Crimes, § 1052.)

GRAY, J. I concur with Judge VANN's opinion, that the order should be affirmed, upon the ground that it was error to admit the oral declarations of the deceased mortgagor that the legacies had not been paid. I, also, agree with him that the nature of the cause of action was such as to impose the burden upon the plaintiff to prove the non-payment of the legacies. It was not in the nature of an obligation for the payment of money; in which case I should agree with the views of Chief Judge CULLEN as to the *onus probandi.*

BARTLETT, J. I agree with Judge GRAY that this action is not on an instrument for the payment of money, and I consequently express no opinion on the general questions of law discussed as to the burden of proof. In this case the plaintiff rests under the *onus probandi.*

WERNER, J., concurs with VANN, J.; O'BRIEN and HAIGHT, JJ., concur with CULLEN, Ch. J.; GRAY and BARTLETT, JJ., concur in result in memoranda.

Order affirmed, etc.