WILLIAM A. CAMP and Another, Copartners, Respondents, *v.* DAVID HORN and Others, Copartners, Doing Business under the Firm Name and Style of ROYAL EXPORT & TRADING CO., Appellants.

First Department, February 8, 1924.

Sales — action by buyers to recover damages for failure to deliver — written contract of sale made through brokers was complete — parol evidence offered by sellers to show that contract was not to become effective unless goods were purchased by sellers was properly rejected — defense that contract was delivered conditionally should have been pleaded.

In an action by the buyers to recover damages for failure of the sellers to deliver the goods, parol evidence is not admissible to show an agreement that the contract was not to become effective unless the sellers purchased the goods sold, where it appears that the written contract of sale was complete and did not provide for its delivery in escrow.

Furthermore, if the sellers desired to prove that the contract was delivered conditionally, it would be necessary under section 242 of the Civil Practice Act for them to plead the defense.

APPEAL by the defendants, David Horn and others, as copartners, etc., from a determination and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 10th day of May, 1923, affirming a judgment of the City Court of the City of New York in favor of the plaintiffs, and also affirming an order of said court denying defendants' motion for a new trial made upon the minutes.

*Stone & Schleimer* [*Max Schleimer* of counsel], for the appellants.

*Joffe & Joffe* [*Louis Joffe* of counsel; *Louis J. Naftalison* with him on the brief], for the respondents.

MARTIN, J.:

Defendants requested Steinhardter & Nordlinger, a firm of food-products brokers, to obtain a purchaser for raisins. Mr. Lester Nordlinger, a salesman of that firm, negotiated with the plaintiffs and succeeded in consummating a sale of 2,000 boxes of raisins, defendants' performance to be guaranteed by a third party. The brokers then sent certain contracts in triplicate with respect to this particular sale to the defendants, asking them to draw their own contracts on the basis of the terms mentioned therein.

Thereafter the brokers received from defendants the contracts in suit drawn by the defendants. These contracts, after they had been signed for defendants by a member of their firm, were taken by the brokers to plaintiffs' place of business and signed by Andrew Wilson, one of the plaintiffs. It was noticed then that the signature of the party guaranteeing performance of the contract on defendants' part was missing.

The contracts were returned by the brokers to defendants with a request that they be countersigned by S. Naitove & Co. as guarantors for defendants. The contracts when countersigned were returned to the brokers who gave one to plaintiffs.

Defendants then wrote to the brokers confirming all the sales made through them, including that made to plaintiffs: " We herewith confirm having sold through you the following lots of raisins: * * * Two thousand cases to W. A. Camp & Company. We herewith agree to pay you the regular brokerage of two per cent (2%). The amount due to be paid you at the time payment is made by the respective buyers."

The written agreement signed by both principals, as well as by the broker and the guarantor, set out the name of the sellers and of the buyers, a detailed description of the commodity sold, the quantity, the quality, packing and shipping requirements, the price and the terms of payment. It provided further that " this contract is subject to the following terms and conditions," enumerating five conditions.

An irrevocable letter of credit, as called for in the contract between the parties, was immediately obtained by plaintiffs and forwarded to defendants by the brokers. This letter of credit was executed in defendants' favor by the Irving National Bank on behalf of plaintiffs. Defendants returned the letter of credit to the brokers, saying: " We are today in receipt of a credit letter from William A. Camp & Co., *covering our sale to them.* This letter we are returning herewith, as it requires under terms of contract that our delivery order to buyers is to be negotiated against his approval * * *."

A new letter of credit with the correction requested was obtained by plaintiffs and sent to defendants by the brokers. The new letter of credit, also an irrevocable one, differed from the first only in that it provided the other terms requested by defendants. The amended letter of credit was received by defendants and retained.

The contract called for the shipment of the 2,000 boxes of raisins *on the first available steamer from Spain* to New York.

When the amended letter of credit was fowarded to defendants, the plaintiffs began making inquiries of the brokers with regard to the shipment of the raisins, and the brokers wrote to defendants: " Our friends are requesting us continually to advise them regarding shipment of these raisins and we must ask you to let us know at once by what steamer these goods are coming forward."

Later plaintiffs by letter to the brokers demanded information. " It is pretty nearly time that we knew something about the 2,000 boxes raisins which we purchased from you through the Royal Export Trading Company. If you know what steamer these goods are on, please advise us."

This demand was communicated by the brokers to defendants: " We beg to send you herewith letter received today from Messrs. Wm. A. Camp & Co. We must have some information regarding these raisins, we will not stand for any further excuses. Please let us hear from you at once."

Defendants replied as follows:

" *March* 4, 1921.

" Messrs. William A. Camp,
    " 202 Franklin Street,
        " New York City, N. Y.:
                " Re Muscatel Raisins.

" Gentlemen.— Replying to your favor of February 26th, which has been unanswered to date, owing to the writer's absence, we regret to have to advise that we are as yet without specific word regarding the shipment. This news, however, is expected momentarily and immediately upon receipt of same we will not fail to advise you.

" Respectfully yours,
        " ROYAL EXPORT & TRADING CO.
                " Per Adolph Prussim."

It was conceded by defendants' counsel on the trial that demand for delivery was made by plaintiffs after February twenty-third.

The goods sold under the contract were never received by plaintiffs. After evidence as to all of the above had been adduced, defendants endeavored to introduce evidence of an oral agreement

with the brokers, alleged to have been made when the agreement was delivered, to the effect that the contract was not to become operative unless defendants themselves purchased the raisins. This evidence was objected to and ruled out. Despite this ruling, defendants' counsel repeated question after question designed to prove the oral agreement.

The jury brought in a verdict for plaintiffs for the sum of $1,000. It is now contended that the court erred in not permitting oral evidence to destroy the contract, complete in all its terms, by showing it was wrongfully delivered to plaintiffs by the broker who had been instructed to hold it in escrow. The overwhelming documentary evidence proved that this theory of defense was an afterthought.

The Court of Appeals in *Engelhorn* v. *Reitlinger* (122 N. Y. 76, 82) said: " Here is a complete agreement. It covers the obligations and duties of both parties, and it leaves nothing unprovided for. If it is to be controlled by evidence of the parol stipulation alleged in the answer, the entire contract is to be changed. The seller's obligation, instead of being limited to a delivery of the quinine at the time mentioned, is increased by a duty of raising the price of his goods and notifying the trade of that fact. His right to the purchase-money and the defendants' obligation to pay the same instead of being dependent upon a delivery of the quinine is made to depend upon another condition not mentioned in the written agreement and wholly independent of the delivery of the goods. In other words, a new contract is to be proven by parol, and the written engagement of the parties is to go for nothing. We are to go outside of the instrument to find a stipulation upon which the validity of the contract is to depend, and then we are to enforce a parol stipulation to the absolute destruction of the written instrument. In the face of such a result it might well be asked what would be left of the rule which forbids parol evidence varying the terms of a written contract."

In *Weiss* v. *Brown* (201 App. Div. 560, 564) the court said: " Upon the foregoing state of facts and although there was no claim that the agreements described were procured by fraud, the defendant was permitted over the objections of the plaintiff to introduce oral testimony tending to contradict and vary the terms of the agreements for the purpose of showing that although the note on its face was an absolute promise to pay to the plaintiff the sum of $12,500 it was in fact agreed between the parties that such payments were only to be made out of the profits of the business. The provisions of the agreements clearly warrant no such inference.  *  *  *  There is nothing in the agreement that

suggests that the note was given conditionally or in any wise dependent upon the profits to be realized from the business of the corporation."

In any event if defendants desired to prove that the contract had been delivered conditionally it was necessary to plead to that effect.

Section 242 of the Civil Practice Act, which confirms a rule of pleading as fixed by the courts (Report of Joint Legislative Committee on Simplification of Civil Practice [N. Y. Legis. Doc. 1919, Vol. 40, No. 111], p. 176, note), provides as follows: " The defendant or plaintiff, as the case may be, shall raise by his pleading all matters which show the action or counterclaim not to be maintainable, or that the transaction is either void or voidable in point of law, and all such grounds of defense or reply, as the case may be, which if not raised would be likely to take the opposite party by surprise or would raise issues of fact not arising out of the preceding pleadings, as, for instance, fraud, Statute of Limitations, release, payment, facts showing illegality either by statute, common law or Statute of Frauds. The application of this section shall not be confined to the instances enumerated." (See, also, *Stiebel* v. *Grosberg,* 202 N. Y. 266; *Abrahamson* v. *Steele,* 176 App. Div. 865; *Block* v. *Stevens,* 72 id. 246; *Niblock* v. *Sprague,* 200 N. Y. 390; *Milbank* v. *Jones,* 127 id. 370.)

The answer alleged there was a contract and pleaded that it contained a clause " No arrival, no sale." The answer did not set up that the contract was to be held in escrow. Evidently that alleged ground of defense was thought of when it was discovered that the " no arrival, no sale " provision had been construed adversely to defendants.

In this case it is apparent from the evidence that the contract had never been delivered in escrow and that it was a complete contract which defendants failed to perform.

The determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Determination affirmed, with costs.