ALEXANDER F. WALSH and Another, as Executors, etc., of MILES E. HODGES, Deceased, Appellants, *v.* MILO J. GRAY, Respondent.

Third Department, November 12, 1925.

**Mortgages — chattel mortgage — action to adjudicate two instruments to be chattel mortgage and to foreclose same — instruments held to be chattel mortgage — error to reject check given by testator to defendant made at time of transaction — alleged statement of testator, after execution of mortgage, that defendant did not owe him, does not overcome effect of written instruments — plaintiffs not required to prove non-payment — burden is on defendant mortgagor to allege and prove payment — defendant, having defaulted, mortgage will be foreclosed.**

A chattel mortgage arose out of two written instruments executed by defendant to plaintiffs' testator, in one of which he sold certain property to plaintiffs'

testator for $2,000, and in the other, executed under seal concurrently with the first and annexed to the first, it was agreed that the property should be leased to the defendant at an annual rental and that plaintiffs' testator would sell the property to the defendant for the sum of $2,000 at any time within a term of five years, since it appears that the property in question remained in the possession of the defendant, and that the instruments were intended to operate as security for a loan in view of the defeasance clause contained therein.

It was error for the court to refuse to permit the plaintiffs to introduce in evidence a check for $1,500, given by testator to the defendant at the time of the transaction, for it was material to show that at that time the plaintiffs' testator paid to the defendant the money in question.

Alleged declarations made by the plaintiffs' testator, after the transaction in question, will not be permitted to overcome the effect of the two instruments, since it appears that the testimony as to those declarations is not definite, and was given, in one instance, by a witness who was admittedly hostile to the plaintiffs' testator, and in another instance by a witness who testified that out of curiosity he asked plaintiffs' testator whether or not defendant owed him any money. Furthermore, it was undoubtedly true, at the time of the alleged declaration, that the defendant did not owe the plaintiffs' testator any money, for at that time the mortgage was not due.

The burden was not upon the plaintiffs to prove non-payment of the loan secured by the mortgage, but the burden was on the defendant to allege and prove that the loan had been paid, and this burden he did not carry.

Since it appears that the two instruments constitute a chattel mortgage and that the defendant was in default at the time this action was commenced, he is entitled to judgment foreclosing the mortgage.

APPEAL by the plaintiffs, Alexander F. Walsh and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 21st day of April, 1925, upon the dismissal of the complaint at the close of the entire case.

*Rowe & Walsh* [*A. F. Walsh* of counsel], for the appellants.

*Leary & Fullerton* [*Walter A. Fullerton* and *A. W. Pitkin* of counsel], for the respondent.

HINMAN, J.:

The action was brought to obtain adjudication that two certain instruments in writing constituted a chattel mortgage, and for the foreclosure thereof for non-payment of certain annual payments of $125 each. The answer consisted of denials without pleading payment or any other affirmative defense. The trial court held that the plaintiffs failed to prove the allegations of their complaint or to establish a cause of action; that the instruments sued on did not constitute a chattel mortgage; that the action being an equitable one to enforce a lien and not an instrument for the payment of money only, plaintiffs were bound to prove non-payment to establish their cause of action, which they had failed to do.

The court found that the defendant, on January 5, 1921, duly executed and delivered to Miles Hodges, plaintiffs' testator, an instrument in writing whereby he sold to Hodges for $2,000 certain specified personal property; that concurrently therewith the said parties executed under seal an instrument in writing (which was physically annexed to said first-mentioned instrument) whereby the said Hodges leased said property to the defendant for the period of five years, and the defendant agreed to pay to said Hodges annually thereafter the sum of $125 as annual rent for said property; and whereby it was agreed that Hodges should sell the property to the defendant for the sum of $2,000 at any time within said term; that thereafter, on the 26th day of December, 1922, the said Hodges died leaving a last will duly admitted to probate, appointing plaintiffs the executors thereof, and that they duly qualified as such; and that upon the death of said Hodges the said instruments were found uncanceled among his private papers by his executors.

On the trial plaintiffs put in evidence the instruments in question and showed without dispute that they had demanded payment of the two installments falling due after Hodges' decease and that defendant had refused to pay the same. Plaintiffs also put in evidence a check from Hodges for $1,500 to the order of the defendant bearing the same date as the instruments in question and containing the defendant's indorsement. The defendant testified to certain matters in explanation of this check. After the submission of the case for decision, the trial court refused admission of the check, although the defendant had not objected or excepted to its reception in evidence and sought only to explain it. This was error. The evidence as to this check is material and is properly in the case. There is also evidence in the record that the defendant gave to Hodges a check for $82.93 marked " payment in full to date " and used by Hodges, which check was likewise dated January 5, 1921, the same date as the instruments of sale and lease which respectively recited a consideration of $2,000 and a right to repurchase at $2,000. The court found that the said parties had previous business transactions together unrelated to the instruments in question. It was shown on the trial that in 1919 defendant went into bankruptcy. Whether he received a discharge did not appear but it was shown that about a year thereafter Hodges had an auto truck from defendant and sold him a team. The team was included in the bill of sale in question, under which the defendant purported to sell in his own name horses, cows, harness, wagons, sleighs, milking machine and all farming tools and implements of every kind then on his farm.

The defendant did not, on the trial, deny the execution by him of these instruments. They were instruments under seal and he proved no release. He offered no explanation as to their existence uncanceled in the possession of Hodges. He neither pleaded nor proved failure of consideration, payment or any other affirmative defense. He relies, for his defense upon the legal proposition that the bill of sale and lease did not constitute a chattel mortgage because of absence of proof that these instruments were intended and agreed to be as security for a loan; that Hodges had made admissions about three months subsequent to their execution that they were for the protection of the defendant; and that the defendant did not at the time of such admissions owe Hodges a cent.

The bill of sale and lease physically annexed thereto, duly signed, sealed and acknowledged, reciting the payment of $2,000 to defendant by Hodges, and containing the agreement of defendant to pay annual rental in installments of $125, and providing for a resale of all the property to defendant at any time within five years thereafter for $2,000, the property to remain in the possession of the defendant, are presumed to have been made for some valid purpose. The presumption also arises therefrom that the $2,000 consideration had been received by the defendant from Hodges. The instruments having been executed at one time as parts of one transaction, must be read together. The instruments as well as other proof show that the property remained in the possession of the defendant after the purported sale and the intent of the parties that the instruments should operate as security for a loan is shown from the defeasance clause appearing therein. (*Sheldon* v. *McFee*, 216 N. Y. 618, 621, 622; *Dickinson* v. *Oliver*, 195 id. 238, 246; *Mooney* v. *Byrne*, 163 id. 86, 92; *Brown* v. *Bement*, 8 Johns. 96; *Clark* v. *Henry*, 2 Cow. 324.) In *Sheldon* v. *McFee* (*supra*, 621) the court said: " The right to redeem is the essential characteristic of a mortgage, and a bill of sale of chattels with a separate defeasance is as clearly a mortgage as if the defeasance formed a part of the bill of sale. (*Mooney* v. *Byrne*, 163 N. Y. 86, 92; *Brown* v. *Bement*, 8 Johns. 96; Jones on Chattel Mortgages, § 19.) An agreement to sell the same property, for the same price, made at the same time, and between the same parties, is a defeasance. (*Dickinson* v. *Oliver*, 195 N. Y. 238, 246.) A bill of sale absolute on its face transferring property to be held as security for the payment of a debt due the vendee is in character and effect a mortgage and is to be treated as such. * * * The intention may be manifested by the instrument itself, or by a written instrument of defeasance executed simultaneously with the conveyance or by the parol declaration or even the acts of the

parties. (*Clark* v. *Henry,* 2 Cow. 324)." The fact that these instruments operated in law to create a chattel mortgage arises from the face of the instruments themselves and this is not overcome by the vague and uncertain testimony offered by the defendant. The vague admission of Hodges three months later that he had a paper in his safe, " but there is nothing to it; that is only for the protection of Gray," might not have related to these instruments but to some other paper relating to other transactions. Concededly they had had other financial transactions, both before and after the defendant's bankruptcy. Moreover, these instruments had never been filed by Hodges. They were filed after his death by his executors. It is not shown how these unfiled papers would be any protection to Gray. The admission sought to be proved by Hodges' widow that three months after the date of these instruments Hodges told her the defendant did not owe him a cent, was ineffective to prove either that there was no consideration for these instruments or that the obligation had been paid. Her testimony is subject to scrutiny because she admitted he was not accustomed to talk over his business affairs with her and that afterward they became estranged and separated. She also admitted that she was unfriendly to Hodges' residuary legatee but friendly to the defendant and that she would like to see the defendant relieved of his indebtedness. She admitted that she had asked Hodges before the alleged admission about Hodges loaning the defendant money and had " got no satisfaction." It is entirely likely that Hodges referred to the old business transactions with defendant and that the check for $82.93 marked " payment in full to date " closed up all previous transactions. This check certainly does not account for the $2,000 sale and lease dated that same day, the papers for which were presumably on that same day delivered to Hodges and left in his possession. It is also likely that he was not inclined to take her into his confidence and his answer was as likely as not an attempt to close the conversation without giving her the real facts. He was not accustomed to discuss his affairs with her and gave her no satisfaction on previous similar occasions. In fact, in a very practical sense, there was nothing due Hodges from defendant under these instruments at the time. There was no installment due until the following January. Her testimony was insufficient to establish any defense of payment, as against the evidence that the instruments were valid and unpaid from the fact that they were in the possession of Hodges, uncanceled, with payments still due upon them. (*Fitzmahony* v. *Caulfield,* 25 App. Div. 119.) Much the same criticism may be made of a similar admission of Hodges sought to be proved by another

witness.  He was not certain as to the time of the conversation.
Hodges did not volunteer the statement and certainly this witness
was not personally interested in getting a truthful statement on
the subject from Hodges.  He was simply curious when he asked
Hodges whether he got square with the defendant and received
the reply, " Gray don't owe me a dollar."  It is entirely likely
that he referred to old business transactions, related to the bank-
ruptcy perhaps.  In any event the rights of the plaintiffs should
not depend upon the verity of such an answer to a curious person
who had no right to expect a truthful answer.  The defendant
himself was a witness but he offered no testimony with reference
to the instruments themselves, or the payment of the obligation.
In fact he testified with reference to many items of account in
explanation of the $1,500 check and the $82.93 check but did not
offer to show that the $2,000 consideration for the sale and lease
was included in the account which was settled by the latter check.
There being other transactions between the parties, it would be
presumed that the $82.93 check was intended to extinguish the
earlier transactions.  (*Lynch* v. *Lyons*, 131 App. Div. 120; affd.,
197 N. Y. 595; *Kloepfer* v. *Maher*, 84 N. Y. Supp. 138.)

The *prima facie* case proved by the plaintiffs was not overcome
and the court was in error in holding that " plaintiffs were bound
to prove non-payment to establish their cause of action."  The
instruments sued upon created an obligation for the payment of
money.  (Civ. Prac. Act, § 242; *Camp* v. *Horn*, 208 App. Div.
122, 126; *Conkling* v. *Weatherwax*, 181 N. Y. 258; *Dowling* v. *Hast-
ings*, 211 id. 199, 200; *Redmond* v. *Hughes*, 151 App. Div. 99; *Gamble*
v. *Lewis*, 88 Misc. 139, 142; *Sea Gate Hotel Co.* v. *Nahmmacher*,
112 id. 100.)  " Nor is the rule different in an action in equity."
(*Conkling* v. *Weatherwax, supra*, 274.)  The burden of alleging and
proving payment rested with the defendant.  This defense was
neither pleaded nor proved.  Certainly there was no presumption
under all the facts in this case that the chattel mortgage had been
paid when the instruments were still in the possession of the
plaintiffs uncanceled and unaccompanied by a release under seal,
both instruments having been under seal; nor that any installments
had been paid before they became due.  (*Fitzmahony* v. *Caulfield,
supra.*)  The plaintiffs showed that two of the installments which
became due after Hodges' death had not been paid and that is
not disputed.  The plaintiffs have shown themselves entitled to
the relief demanded in their complaint.

The judgment should be reversed upon the law and the facts
and judgment directed for the plaintiffs, with costs, the court
finding as facts and conclusions of law in accordance with plaintiffs'

proposed findings including findings of fact Nos. 6, 7 and 10, in addition to the facts already found.

All concur.

Judgment reversed on the law and facts, and judgment directed for the plaintiffs in accordance with their requested conclusions of law, with costs, the court finding in accordance with plaintiffs' proposed findings of fact 6, 7 and 10, in addition to the facts already found.