OPINION OF THE COURT
George M. Heymann, J.
Petitioner moves for summary judgment in this holdover *99 proceeding alleging that the respondent, Thomas P. Sherlock, does not, and never did, occupy the premises located at 29 Glenz Estate, Bronx, New York, as his primary residence.
The respondent has cross-moved for summary judgment alleging that the occupant of the subject premises, Peter Kowalsky, son-in-law of Thomas P. Sherlock, always intended to reside in and own the dwelling unit from the time it was purchased by Sherlock from the prior rent-stabilized tenant and does, in fact, reside there as his primary residence.
Historical Background
As previously set forth by this court in an earlier decision, wherein the respondent sought dismissal of the instant proceeding on other grounds (170 Misc 2d 308), the subject premises in this proceeding is one of a unique class of housing in the City of New York wherein the dwelling unit is owned by one party and the land upon which said structure is constructed is owned by someone else.
The petitioner is the owner of land situated in Bronx County known as Glenz Estate. The subject premises, 29 Glenz Estate, is one of eight individual homes upon such land.
On May 1, 1992 in an order determining facts or establishing legal regulated rent, the Division of Housing and Community Renewal (DHCR) made a determination which states in relevant part that "the total land area known as 9 Glenz Estate is subject to the Rent and Eviction Regulations and/or the Rent Stabilization Code, depending upon each individual home owner’s initial date of occupancy, those that took occupancy of their homes prior to June 30, 1971 are hereby considered Rent Controlled and those that took initial occupancy of their homes after June 30, 1971 are hereby considered Rent Stabilized”. DHCR further determined that the then tenant residing at 29 Glenz Estate was considered rent stabilized due to her initial occupancy of the premises after June 30, 1971 and established the legal regulated rent, to be paid to the owner of the land, at $50 per month, effective April 1, 1987.
Factual Background
On November 8, 1994, Thomas and Marilyn Sherlock purchased the premises known as 29 Glenz Estate from the estate of Ana Burke for the sum of $6,000.
Subsequently, that same date, the Sherlocks negotiated a new bill of sale with Peter Kowalsky to purchase said premises *100 for $6,000. The bill of sale lists the Sherlocks as the sellers, residing at 9 Glenz Estate, as well as being the purchasers along with Kowalsky. The bill of sale provides in relevant part that the house "is set on land and rented and leased by the party of the first part, at the rate of $50.00 per month, and that said house may be moved if necessary”. It further provides "that there is no written lease with the owner of the land on which the house is set”.
Contemporaneously with the new bill of sale, the Sherlocks and Kowalsky executed a promissory note and agreement regarding the respective relationship of the parties vis-a-vis the sale and purchase of 29 Glenz Estate.
The Sherlocks and Kowalsky then worked out a two-year payment schedule which was to terminate in October 1996.
On October 30, 1996, the Sherlocks and Kowalsky reexecuted another bill of sale wherein the Sherlocks, for the consideration of $1, relinquished all rights to 29 Glenz Estate.
At the present time, Kowalsky is the sole owner of the subject premises having paid off the $6,000 loan to the Sherlocks during the pendency of this proceeding. Counsel thus maintains that this proceeding shoüld be dismissed as against the Sherlocks as they no longer have any interest whatsoever in the premises and that the petitioner cannot obtain a judgment of possession against Kowalsky in that he is in compliance with the Rent Stabilization Law by occupying the premises as his primary residence.
Issue
The issue here, which appears to be one of first impression, is whether the current owner and occupant of 29 Glenz Estate, Peter Kowalsky, who did not purchase the subject premises directly from the estate of the prior rent-stabilized owner, is protected by rent stabilization.
Conclusions of Law
In seeking to obtain a judgment of possession against the respondents, petitioner’s counsel contends that the transfer of the title to the property from the estate of Ana Burke to the Sherlocks, who never intended to reside in, nor did reside in the premises, broke the rent stabilization "chain”, leaving the premises unprotected at the time the Sherlocks conveyed it to Kowalsky.
Respondent’s counsel contradicts this position claiming that, even if the rent stabilization chain were broken, the subsequent *101 transfer to Kowalsky, who resides in the premises as his primary residence, brings it back under rent stabilization protection.
Counsel for the respondent argues that Kowalsky was the sole occupant of the premises since the original sale between the estate of Ana Burke and the Sherlocks; that the purpose of the Sherlocks remaining on the second bill of sale was for collateral purposes; that the "intention” of all the parties was for this house to be purchased for Kowalsky to reside in and that the Sherlocks loaned Kowalsky the money to purchase the premises.
Counsel further avers that since Kowalsky has evidenced all the indicia of ownership, i.e., maintaining the premises, paying all the bills, including utilities; filing tenant complaints with the DHCR, etc., he is entitled to a rent-stabilized lease with the owner of the property.
The thrust of petitioner’s argument stems from the language of a prior decision rendered by Judge Anthony J. Fiorella involving the same parties herein, in which the court, relying on a DHCR opinion letter, dated July 11, 1994, stated that "a tenant must maintain a housing accommodation as his or her primary residence to receive the protection of rent stabilization. The parcel would be rent stabilized for a subsequent purchaser who maintains the house as a primary residence and in such a case the owner (of the property) could not require the purchaser (of the house) to remove the house.” (Emphasis added.)
Although the petitioner interprets Judge Fiorella’s decision to require the first purchaser of the house from the estate of the deceased rent-stabilized owner/tenant to reside therein as his or her own primary residence, as well as each successive purchaser thereafter, in order to derive the benefits of rent stabilization, a reading of the entire DHCR opinion letter, wherein the author conceded that "[this] situation presents possible new issues of law”, makes it apparent that a break in the "chain” was contemplated by DHCR.
The letter, written to the niece of the deceased owner of 29 Glenz Estate, stated in relevant part:
"As a general rule, a tenant must maintain a housing accommodation as his or her primary residence in order to receive the protection of rent stabilization. An issue in your situation is whether the parcel would be subject to rent stabilization if you did not occupy the house as your primary *102 residence. Issues of primary residence are determined by the court and not DHCR.
"The parcel of land would be rent stabilized for a subsequent purchaser who maintains the house as a primary residence and in such a case, the owner could not require the purchaser to remove the house. Again, there is an issue of what rights, if any, the subsequent purchaser would have concerning the renting of the parcel if the purchaser does not reside in the house as his or her primary residence. ” (Emphasis added.)
Therefore, as can be seen from the above paragraphs, it was possible for the niece to retain possession of the house, albeit she would not be protected by rent stabilization if it was not her primary residence, and still convey the premises to a "subsequent purchaser” who would be protected if that person did, in fact, reside there as a primary residence.
Notwithstanding the fact that these houses represent a unique and limited portion of the entire housing stock within the City of New York, they became rent stabilized by legislative fiat in order to obtain a desired result. (See, Matter of Silver Beach Realty Corp. v Berman, 31 AD2d 625 [dissenting opn]; Rent Stabilization Code [RSC] [9 NYCRR] § 2524.4 [c].) It is the opinion of this court that any owner of this class of houses who resides in the house as his or her primary residence is protected by rent stabilization, regardless of the status of the immediate past owner(s).
By way of analogy, this situation should not be treated differently from that of a standard landlord-tenant relationship where a landlord recovers possession of a rent-stabilized apartment from a tenant who was unsuccessful in defending a non-primary residence holdover proceeding. While it is possible for the landlord to seek a higher regulated rent from a subsequent tenant, that tenant is nonetheless protected by rent stabilization, upon the commencement of his or her occupancy, if said premises is maintained as a primary residence, since it is the status of the premises, and not the individual tenancy, that remains rent stabilized, unless otherwise changed by statute.
Regarding the case at bar, the intent of the Legislature is clearly set forth in the "Legislative declaration” of section 1 of chapter 69 of the Laws of 1980:
"During the housing emergency arising in and after World War II, a special class of housing was created within New York city which had some unique features and problems. This class of housing was a privately owned dwelling unit placed or *103 constructed on another’s land by the owner of the building. The land remained the possession of the private land owner; the housing remained the possession of the home owner. Rent was paid by the home owner to the land owner for use and occupancy of the land. In recognition of the special problems presented by this category of housing, and the great hardship and displacement which would occur without any protection to the home owner, this category of housing was added to the provisions of the rent control laws operated locally within the city of New York in nineteen hundred sixty-two.
"Chapter three hundred seventy-one of the laws of nineteen hundred seventy-one, commonly known as the vacancy decontrol law, threw into question the future stability of the home owners of this category of housing as well as all other categories of rental units upon the occurrence of a vacancy. However, with the adoption of the emergency tenant protection act of nineteen seventy-four, the state enunciated its position that dwelling units removed from the jurisdiction of standard rent controls as a result of a vacancy would be stabilized on or after July first, nineteen hundred seventy-four. The emergency tenant protection act of nineteen seventy-four excluded from its coverage rental dwelling units in buildings containing six or less units. This exclusion was based upon a recognition of special problems faced by owners of small rental properties. It is clear, however, that the special category of housing consisting of private dwelling units owned by the occupant but located on land rented from another private party is not the equivalent of a rented single family house nor even the equivalent of an apartment in a building containing less than six families. The continued impact of vacancy decontrol would create substantial hardship and financial loss to the owner of the dwelling unit, disruption and chaos. Such results are contrary to the emergency tenant protection act and the policy of the state of New York. For these reasons this act clarifies that the protection of the emergency tenant protection act extends to such dwelling units and shall provide a continuity of stability to the home owner and tenants thereof.
"This act would further clarify that transfer of title or occupancy of such dwelling unit from one person to a member of his immediate family shall not constitute a vacancy within the meaning of chapter three hundred seventy-one of the laws of nineteen hundred seventy-one. Unlike rental agreements between an owner of the property and a tenant thereof, the dwelling unit owner in the special category of housing covered by this *104 act has such a substantial financial equity in the realty so as to make it undesirable to interpret such transfers of title and! or occupancy within the immediate family as effectuating vacancy decontrol.” (Emphasis added.)
Based upon the foregoing, the court finds that the transfer of the property from the estate of Ana Burke to the Sherlocks, who then transferred it to Kowalsky within a matter of hours, before the Sherlocks could have physically moved in and establish a tenancy, did not divest Kowalsky of rent stabilization protection, provided he became an owner of the premises and resided therein as his primary residence. Accepting the petitioner’s contentions that Kowalsky could not obtain rent stabilization protection from the Sherlocks, who, it is alleged, never had any such rights to transfer, in effect, puts form over substance and does not comport with the legislative objectives of maintaining these particular houses within the framework of rent stabilization.
Thus, the only remaining issue to be determined is whether Kowalsky, who undisputedly resided at 29 Glenz Estate since the property was transferred to him, became an owner of the subject premises. Although petitioner maintains that Kowalsky did not become the owner of the property until he satisfied his promissory note to the Sherlocks, a presumption arises that where a bill of sale recites that personal property has been sold for a specified sum, such sum has been paid by the buyer to the seller. (Walsh v Gray, 214 App Div 296.) As stated by the respondents, the sole purpose of retaining the names of the Sherlocks on the bill of sale was for collateral purposes only and did not affect the passing of title to Kowalsky. The status of the Sherlocks with respect to Kowalsky was similar to that of a mortgagee and mortgagor, respectively.
Assuming, arguendo, that Kowalsky did not own the premises between November 8, 1994 and October 30, 1996, the petitioner would, at best, be relegated to a plenary action to recover monies that may be due and owing for rental of the land. At this juncture, however, there is no issue as to Kowalsky’s sole ownership of 29 Glenz Estate, as evidenced by the bill of sale, dated October 30, 1996.
Accordingly, for the reasons stated above, the petitioner’s motion for summary judgment, on the grounds that the respondents do not reside in the subject premises as their primary residence, is denied. The respondent’s cross motion for summary judgment is granted and the petition is dismissed.